[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14771

_____

D.C. Docket Nos. 0:19-cv-62215-WPD; 0:07-cr-60238-WPD-4

ANTHONY FOSTER,

Petitioner - Appellant,

versus

UNITED STATES OF AMERICA,

Respondent - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 4, 2021)

Before JORDAN, MARCUS and GINSBURG,[*] Circuit Judges.

MARCUS, Circuit Judge:

A law enforcement reverse sting operation caught Anthony Foster in the midst of an effort to commit armed robbery of a house he believed held the cocaine stash of a Colombian drug cartel.  A jury convicted Foster of, among other things, both conspiring to use and using a firearm during a crime of violence or drug trafficking offense in violation of 18 U.S.C. § 924(o) and § 924(c).  On direct appeal, we affirmed his convictions and the ensuing sentence.  United States v. Parker et al., 376 F. App'x 1, 3 (11th Cir. 2010) ("Parker I").  Foster now appeals the district court's rejection of his § 2255 collateral attack on these convictions.

Foster claims that under United States v. Davis, 139 S. Ct. 2319 (2019), the only crime-of-violence offense that the jury could have relied on to predicate the challenged convictions -- conspiracy to commit Hobbs Act robbery -- is not actually a crime of violence.  Even though conspiracy to commit Hobbs Act robbery is not a crime of violence, his § 2255 motion still fails.  This is because in addition to the Hobbs Act conspiracy, the district

_____

[*] Honorable Douglas H. Ginsburg, United States Circuit Judge for the District of Columbia Circuit, sitting by designation.

court instructed the jury that it could predicate the challenged § 924(c) and (o) convictions on two related drug trafficking offenses, attempt and conspiracy to possess cocaine with intent to distribute. Given the facts and circumstances presented at trial, the jury could not have relied on the invalid Hobbs Act conspiracy predicate without also relying on the drug trafficking offenses, each of which remain valid predicates. Our recent holdings in Granda v. United States, 990 F.3d 1272, 1292, 1296 (11th Cir. 2021) and Parker v. United States, --- F.3d ----, No. 19-14943, 2021 WL 1259432, at *6 (11th Cir. Apr. 6, 2021) ("Parker II") defeat Foster's claims. We affirm.

I.

A.

The facts of this case have already been thoroughly set out by this Court in Foster's direct appeal and in our recent ruling on a co-defendant's § 2255 motion. See Parker I, 376 F. App'x at 6–10; Parker II, 2021 WL 1259432, at *1–2. Rather than repeating all of those facts, it is enough to note that Foster conspired with others and planned to commit armed robbery of a house he believed held some 15 kilograms of cocaine. Parker I, 376 F. App'x at 7; Parker II, 2021 WL 1259432, at *1–2. He was unaware, however, that this plan was part of a sting operation by the Bureau of

3

Alcohol, Tobacco, Firearms and Explosives ("ATF").  The robbery crew comprised three individuals in addition to Foster -- Ishwade Subran, Patrick Aiken, and Wade Parker.  Parker II, 2021 WL 1259432, at *1.  According to the plan, Foster was supposed to execute the robbery along with Parker and Aiken; Subran would serve as the getaway driver.  Parker I, 376 F. App'x at 8; Parker II, 2021 WL 1259432, at *2.  As the crew waited for the cartel to phone in the location of the stash house, the police moved in and arrested Subran, Aiken, Parker, and Foster.  Parker I, 376 F. App'x at 7; Parker II, 2021 WL 1259432, at *2.

At the time of his arrest, law enforcement agents found a loaded Smith & Wesson 9mm pistol on Foster's person.  Parker I, 376 F. App'x at 9; Parker II, 2021 WL 1259432, at *2.  An agent also discovered a loaded Walther PPK/S .380 caliber pistol between the driver's seat and the center console in the Infiniti that Subran, Aiken, and Parker had arrived in.  Parker II, 2021 WL 1259432, at *2.  The car also contained a rope, duct tape, black gloves, and Foster's Jamaican passport.  Id.

## B.

A grand jury sitting in the Southern District of Florida returned a superseding indictment charging Foster, Aiken, Subran, and Parker with:

4

- Count 1: Conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a);

- Count 2: Conspiracy to possess with intent to distribute at least five kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846;

- Count 3: Attempt to possess with intent to distribute at least five kilograms or more of cocaine, in violation of 21 U.S.C. § 841(b)(1)(A);

- Count 4: Conspiracy to use and carry a firearm during and in relation to a crime of violence as set forth in Count 1 and a drug trafficking offense as set forth in Counts 2 and 3, and to possess a firearm in furtherance of such crimes, in violation of 18 U.S.C. § 924(o);

- Count 5: Using and carrying a firearm during and in relation to a crime of violence as set forth in Count 1 and a drug trafficking offense as set forth in Counts 2 and 3, and possessing a firearm in furtherance of such crimes, in violation of 18 U.S.C. § 924(c)(1) and 18 U.S.C. § 2; and

- Count 6: Possessing a firearm as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).

Parker I, 376 F. App'x at 3.  Aiken pleaded guilty, but the other defendants proceeded to trial.  Id. at 5.  The jury heard testimony from the undercover ATF agent and other agents recounting the facts as we have described them.  Id. at 6–8; Parker II, 2021 WL 1259432, at *1–2.

As for Count 4 -- the § 924(o) count -- the district court instructed the jury that to convict it had to find beyond a reasonable doubt that the defendants conspired "to commit the crime of violence charged in [Count 1]"

5

or "to commit the drug trafficking offense charged in either Counts 2 or 3,"

and that they knowingly carried or possessed a firearm while doing so.[1]

As for Count 5 -- the § 924(c) count -- the judge instructed the jury that

to convict it had to find beyond a reasonable doubt that the defendants

"committed the crime of violence charged in Count 1 of the Indictment or

that the [defendants] committed the drug trafficking offense charged in either

Counts 2 or 3 of the indictment," that the defendants "knowingly carried or

possessed a firearm," and that the defendants "carried the firearm in relation

---

[1] In relevant part, § 924(o) provides that "[a] person who conspires to commit an offense under subsection (c) shall be imprisoned for not more than 20 years, fined under this title, or both." 18 U.S.C. § 924(o). In turn, § 924(c) provides:

> Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime--
>
> (i) be sentenced to a term of imprisonment of not less than 5 years . . . .

Id. § 924(c)(1)(A). The statute defines "drug trafficking crime" (in relevant part) as "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.)." Id. § 924(c)(2). "'[C]rime of violence' means an offense that is a felony and:

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Id. § 924(c)(3). We often refer to subsection (A) as the "elements clause" and to subsection (B) as the "residual clause."

to or possessed the firearm in furtherance of the crime of violence or the drug trafficking offense." The court further instructed:

> The indictment charges that each Defendant knowingly carried a firearm during and in relation to a crime of violence and a drug trafficking offense and possessed a firearm in furtherance of a crime of violence and a drug trafficking offense. It is charged, in other words, that the defendant violated the law as charged in Count 5 in different ways. It is not necessary, however, for the Government to prove that the defendant violated the law in all of those ways. It is sufficient if the Government proves, beyond a reasonable doubt, that the Defendants knowingly violated the law in some way; but, in that event, you must unanimously agree upon the way in which the Defendants committed the violation.

The district court did not include this unanimity instruction with its Count 4 instructions.

The jury returned a general verdict finding Foster guilty on all six counts. The district court sentenced Foster to a total prison term of 260 months: 200-month terms of imprisonment to be served concurrently for each of Counts 1–4; a 120-month term for Count 6, to be served concurrently; and a 60-month term for Count 5, to be served consecutively. The court also imposed a $100 special assessment for each count.

Foster appealed, and this Court affirmed his convictions and sentence. Parker I, 376 F. App'x at 3. Foster did not argue in his appeal that his convictions on Counts 4 or 5 were based on invalid predicates. Later, based

7

on intervening amendments to the Sentencing Guidelines, the district court granted Foster's motion to reduce his sentence to a total term of imprisonment of 248 months. The order reducing the sentence did not contain a breakdown by count of Foster's newly reduced sentence.

Foster filed an initial § 2255 motion raising issues not relevant here, which the district court denied. He unsuccessfully sought leave to file successive petitions three times. In re: Anthony Foster, No. 16-12105 (11th Cir. May 27, 2016); In re: Anthony Foster, No.16-14080 (11th Cir. July 25, 2016); In re: Anthony Foster, No. 16-16303 (11th Cir. Oct. 31, 2016).

Foster filed still another petition for leave to file a successive § 2255 motion after the Supreme Court's decision in Davis, 139 S. Ct. at 2336 invalidated the § 924(c) residual clause as unconstitutionally vague. Foster argued that his convictions on Counts 4 and 5 must be set aside since the indictment, general verdict, and jury instructions left open the possibility that the jury had relied on an invalid predicate offense to convict him of the § 924(o) and (c) offenses, i.e., the jury may have used Count 1, conspiracy to commit Hobbs Act robbery, as the supporting predicate for both counts. Under controlling Eleventh Circuit caselaw, Hobbs Act conspiracy does not qualify as a crime of violence predicate under the § 924(c)(3) elements

8

clause.  See Brown v. United States, 942 F.3d 1069, 1075 (11th Cir. 2019).

We granted Foster's application.

Foster filed our order granting him leave to file a successive petition in district court on September 3, 2019.  Two days later, the district court issued an order "defer[ring] ruling for ten (10) days to await a response from the Government."  The court apparently treated Foster's motion for leave to file a successive petition as if it were an actual § 2255 motion.  On September 18, 2019, the district court set a hearing date, observing that it had "deferred ruling for ten (10) days to await a response from the Government.  No response was filed."  The district court also appointed counsel to represent Foster.  The hearing was subsequently postponed to November 18, 2019.  On November 14, 2019, Foster filed a counseled Motion to Vacate Pursuant to 28 U.S.C. § 2255, which the court "construe[d] as an amended motion to vacate."  The government's response was due by November 29, 2019.  The government did not file a written response.

Following the hearing, the district court denied Foster's petition on the merits.  It held that since "the Hobbs Act Conspiracy was inextricably intertwined with the drug trafficking charges in Counts Two and Three," "there is no reasonable likelihood that the jury based its verdicts solely on the

9

predicate Hobbs Act Conspiracy and not also on the two drug trafficking predicates." The district court explained "that absent a strained interpretation of the jury's verdict, the jury had to have found a drug trafficking predicate." The court nevertheless granted a certificate of appealability because Foster had "made an appropriate showing on the issue of whether the jury verdict indicates that his convictions on Counts Four and Five were predicated on a drug trafficking crime."

Foster timely appealed.

## II.

We begin with the government's argument, raised for the first time on appeal, that Foster procedurally defaulted his Davis claim. "The procedural-default rule is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." Massaro v. United States, 538 U.S. 500, 504 (2003).

In this case, the government submitted no written response to Foster's petition in district court. Moreover, during the November 18th hearing, the government never argued that Foster had procedurally defaulted his Davis claim. The only oblique reference to procedural default arose when the

government said that "Foster's motion should be denied[,]" and that its

"position is similar to" the position it took in a separate case concerning

Foster's co-defendant.[2]  The government had ample opportunity to assert the

defense of procedural default in Foster's case, yet it said nothing about the

issue aside from making an indirect reference to an argument made in a

separate case.  Foster was not a party to Parker's civil action, and he had no

chance to address whether he could show cause for not timely raising the

error at trial or on direct appeal and actual prejudice from the error, or that he

was actually innocent.  See Bousley v. United States, 523 U.S. 614, 622

(1988) ("Where a defendant has procedurally defaulted a claim by failing to

raise it on direct review, the claim may be raised in habeas only if the

defendant can first demonstrate either 'cause' and actual 'prejudice,' or that

he is 'actually innocent.'") (internal citations omitted).  The long and short of

it is that the government afforded Foster's counsel no real chance to respond

to the claim of procedural default; nor did the district court dispose of

Foster's § 2255 petition on the basis of procedural default.

---

[2] In its brief filed in co-defendant Parker's case, the government argued that Parker's claims were procedurally defaulted.  See Government's Response to Motion to Vacate, Set Aside, or Correct Sentence Pursuant to Title 28, U.S.C., Section 2255 at 6, Parker v. United States, No. 19-CV-62070-WPD, ECF No. 4 (S.D. Fla. Aug. 30, 2019).

Under the peculiar circumstances of this case, we find that the government has waived the affirmative defense of procedural default. See Trest v. Cain, 522 U.S. 87, 89 (1997) ("[P]rocedural default is normally a defense that the [government] is obligated to raise and preserve if it is not to lose the right to assert the defense thereafter.") (internal quotation marks and citation omitted) (alteration accepted); Howard v. United States, 374 F.3d 1068, 1070 (11th Cir. 2004) (finding "the government procedurally defaulted [a movant's] procedural default by failing to raise this affirmative defense in the district court"); Shukwit v. United States, 973 F.2d 903, 904 (11th Cir. 1992) (finding the government "waived its right to argue procedural default on appeal" when it "did not raise the procedural bar issue in the district court"); United States v. Jordan, 915 F.2d 622, 629 (11th Cir. 1990) (declining to address procedural default since "the government did not assert in the district court that Jordan's failure to present his claim on direct appeal should bar consideration of the merits"); Boykins v. Wainwright, 737 F.2d 1539, 1545 (11th Cir. 1984) ("The State's failure to raise . . . the . . . procedural default argument[] in the district court bars it from prevailing on those claims in the Court of Appeals.").

12

As for the merits of Foster's claim, however, we conclude that Foster cannot prevail.  The Hobbs Act conspiracy was inextricably intertwined with Foster's conspiracy and attempt to possess with intent to distribute cocaine (Counts 2 and 3), convictions Foster does not dispute are valid drug trafficking predicates for Counts 4 and 5.  Accordingly, the inclusion of an invalid predicate offense -- the Hobbs Act conspiracy -- in his indictment and jury instructions was harmless.

On collateral review, the harmless error standard mandates that "relief is proper only if the . . . court has grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict.  There must be more than a reasonable possibility that the error was harmful."  Davis v. Ayala, 576 U.S. 257, 267–68 (2015) (internal quotation marks and citations omitted); Ross v. United States, 289 F.3d 677, 682 (11th Cir. 2002) (per curiam) (applying this standard to a § 2255 motion); see also Granda, 990 F.3d at 1292–93 (applying this standard to a § 2255 Davis claim); Parker II, 2021 WL 1259432, at *6 (same).  Put another way, the court may order relief only if the error "resulted in actual prejudice."  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (internal quotation marks and citation omitted).

13

In determining whether an error resulted in actual prejudice, the reviewing court should "ask directly" whether the error substantially influenced the jury's decision. O'Neal v. McAninch, 513 U.S. 432, 436 (1995). If the court "cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error," the court must conclude that the error was not harmless. Trepal v. Sec'y, Fla. Dep't of Corr., 684 F.3d 1088, 1114 (11th Cir. 2012) (quoting O'Neal, 513 U.S. at 437). We review de novo the question of harmlessness under Brecht. Phillips v. United States, 849 F.3d 988, 993 (11th Cir. 2017).

It is undeniable that Foster's valid drug trafficking predicates are inextricably intertwined with the invalid Hobbs Act conspiracy predicate. See Granda, 990 F.3d at 1291 (noting "the alternative predicate offenses are inextricably intertwined" because "each arose from the same plan and attempt to commit armed robbery of a tractor-trailer full of cocaine"). The evidence adduced at trial showed that Foster was an active participant in a plan to rob at gunpoint a stash house that he believed held at least 15 kilograms of cocaine. See, e.g., Parker I, 376 F. App'x at 8 (describing undercover agent's testimony that Foster knew "everything" about the

14

robbery plan and that he would accompany Parker and Aiken into the stash house to conduct the robbery); Parker II, 2021 WL 1259432, at *2. Further, Foster had a weapon on his person during the planned robbery. Parker I, 376 F. App'x at 9; Parker II, 2021 WL 1259432, at *2. Based on this robbery scheme, the jury found Foster guilty of each of three potential predicate offenses -- conspiracy to rob the stash house and conspiracy and an attempt to possess with intent to distribute the cocaine in the house.

There can be no grave doubt that the inclusion of the invalid predicate did not have a substantial influence in determining the jury's verdict in this case. See O'Neal, 513 U.S. at 435 ("By 'grave doubt' we mean that, in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error."). The jury could not have found that Foster's gun use or possession or his gun conspiracy was connected to his conspiracy to rob the stash house without also finding at the same time that they were connected to his conspiracy and attempt to possess with intent to distribute the cocaine he planned to rob from the same stash house. Since there is no real possibility that Foster's convictions on Counts 4 and 5 rested solely on the invalid Hobbs Act conspiracy predicate, the inclusion of an invalid predicate offense in the indictment and jury

15

instructions was harmless.  Cf. United States v. Cannon, 987 F.3d 924, 948 (11th Cir. 2021) (trial record "ma[de] clear" that no rational juror could have found that defendants carried firearms in connection with a conspiracy to rob a cocaine stash house but not also in connection with a conspiracy to possess with intent to distribute the cocaine taken from the house).

We held as much on materially similar facts in Granda.  990 F.3d at 1293.  There, we observed that "the jury could not have concluded that Granda conspired to possess a firearm in furtherance of his robbery conspiracy without also finding at the same time that he conspired to possess the firearm in furtherance of his conspiracy and attempt to obtain and distribute the cocaine, his attempt at carjacking, and the attempt at the robbery itself" because "[t]he objective of the robbery and the carjacking was the same: to obtain and sell the multi-kilogram quantity of cocaine that was to be taken by force from the truck."  Id. at 1289.  We said the same thing in Parker II, which involved Foster's co-defendant.  Parker II, 2021 WL 1259432, at *1–2.  "It is inconceivable that the jury could have found that Parker conspired to, and did, use and carry a firearm in furtherance of his conspiracy to rob the house (the invalid predicate) without also finding at the

16

same time that he did so in furtherance of his conspiracy and attempt to obtain the cocaine in the same house (both valid predicates)." Id. at *4.

Although Foster argues that it is possible the jury relied only on the now-invalid predicate offense, he points to nothing in the trial record that would suggest the jurors distinguished between the alternative predicate crimes. Foster's position is even weaker than Granda's, who asserted -- unsuccessfully -- that his acquittal on a § 924(c) charge was an indication that the jury predicated his § 924(o) conviction on the Hobbs Act conspiracy predicate rather than on what he termed the "substantive" alternative predicates. Granda, 990 F.3d at 1291. Foster, by contrast, was convicted of both § 924(o) and § 924(c) charges; he has no credible basis to argue that it is more likely that the jury predicated these convictions on a robbery conspiracy offense than on the "substantive" drug trafficking offenses, and, in any case, we rejected this argument in Granda. See Parker II, 2021 WL 1259432, at *5.

We note that the jury instructions in this case "suffered from a defect not present in Granda" as "the district court failed to instruct the jury that it had to unanimously decide which predicate or predicates supported the conviction" on Count 4. Id. at *5 (citing Granda, 990 F.3d at 1291).

17

Nevertheless, here, as in Parker II, the record makes clear that the jury was unanimous in its verdict. Foster's predicate offenses were inextricably intertwined so that if the jurors found one applicable -- and we know they did since they found Foster guilty of Counts 4 and 5 -- they necessarily arrived at the same conclusion with respect to the other predicate offenses. See id.; Granda, 990 F.3d at 1291 ("The tightly bound factual relationship of the predicate offenses precludes Granda from showing a substantial likelihood that the jury relied solely on Count 3 to predicate its conviction on Count 6.").

Foster next argues that the district court engaged in impermissible "judicial factfinding" by reviewing the record to determine whether the jury relied on an invalid predicate offense and that the holding in Stromberg v. California, 283 U.S. 359, 368 (1931) necessitates vacatur in this case. Stromberg stands for "the principle that, where a provision of the Constitution forbids conviction on a particular ground, the constitutional guarantee is violated by a general verdict that may have rested on that ground." Griffin v. United States, 502 U.S. 46, 53 (1991). Foster's argument is unpersuasive in light of the Supreme Court's intervening decision in Hedgpeth v. Pulido, 555 U.S. 57, 58, 62 (2008) (per curiam), which held that

18

Stromberg error is subject to the Brecht harmless error standard.  In fact, we noted in Granda that, following Hedgpeth, the harmless error inquiry must involve a "look at the record to determine whether the invalid predicate actually prejudiced the petitioner -- that is, actually led to his conviction -- or whether the jury instead (or also) found the defendant guilty under a valid theory."  990 F.3d at 1294.  And as we have explained, the record in this case makes it crystal clear that if the jury relied on the invalid Hobbs Act conspiracy predicate, it also relied on the valid drug trafficking predicates. The inclusion of Hobbs Act conspiracy as a possible predicate was, therefore, harmless.

Foster also objects to the district court's reliance on the factual overlap among his predicate offenses by invoking a theory we rejected in Granda: that the "categorical approach" applies and requires us to presume that his Count 4 and 5 convictions were predicated on the least serious of the potential predicates, which he assumes is the Hobbs Act conspiracy charged in Count 1.  The categorical approach is "a method for determining whether a conviction under a particular statute qualifies as a predicate offense under a particular definitional clause."  Id. at 1295.  In Granda, we declined to extend

the categorical approach to the distinct "context of determining on which of several alternative predicates a jury's general verdict relied." Id.

Finally, contrary to Foster's assertion, In re Gomez, 830 F.3d 1225, 1228 (11th Cir. 2016) -- which held that a petitioner in a similar case had made the prima facie showing necessary for permission to file a second or successive § 2255 motion -- does not "stand for the proposition that a court may not inquire as to which of several alternative predicates actually supplied the basis for a § 924(c) (or (o)) conviction or that a court is constrained to assume the verdict rested on the least culpable predicate offense." Granda, 990 F.3d at 1296. Foster's interpretation of the categorical approach is not a winning one.

We, therefore, hold that Foster did not suffer harm from the erroneous jury instruction. Accordingly, we **AFFIRM**.