[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-13459

_____

ISAAC SEABROOKS,

Petitioner-Appellant,

*versus*

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket Nos. 1:18-cv-22446-BB,
1:14-cr-20558-BB-1

_____

Before WILSON, ROSENBAUM, Circuit Judges, and CONWAY,* District Judge.

PER CURIAM:

Isaac Seabrooks, a federal prisoner, appeals the district court's denial of his timely 28 U.S.C. § 2255 motion to vacate. In his motion, Seabrooks challenged his felon-in-possession conviction, arguing that the district court erred when it instructed the jury on aiding and abetting even though the government failed to prove that Seabrooks knew his co-defendant was a convicted felon. After reviewing the briefs and with the benefit of oral argument, we reverse the district court's denial of Seabrooks's § 2255 motion, vacate Seabrooks's felon-in-possession conviction, and remand for further proceedings consistent with this opinion.

I

A. Factual Background

We begin with a description of Seabrooks's charges and trial. Because this Court provided a thorough discussion of the trial on direct appeal, we present only a brief overview and supplement. See United States v. Seabrooks, 839 F.3d 1326, 1329–31 (11th Cir. 2016).

---

* Honorable Anne C. Conway, United States District Judge for the Middle District of Florida, sitting by designation.

In 2014, a federal grand jury returned a two-count indictment that charged Seabrooks and his co-defendant Nigel Butler with one count of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1) (Count 1) and one count of possessing a stolen firearm and ammunition, in violation of 18 U.S.C. § 922(j) (Count 2). Although Butler pleaded guilty to both counts, Seabrooks proceeded to trial.

At trial, the government's witnesses testified to the following facts. On July 23, 2014, Butler, who was driving a stolen Cadillac while Seabrooks was in the front passenger's seat, pulled into a parking lot in Grapeland Park. As he entered, Butler rolled down his window and parked next to a green truck. After another car left the parking lot, Butler exited the Cadillac, broke into the passenger-side door of the truck, removed several items, placed them inside the Cadillac, and drove away. Meanwhile, Seabrooks never exited the Cadillac.

Shortly after they left, Butler and Seabrooks returned to the parking lot and remained in the Cadillac. When they tried to leave again, police arrived. The police blocked their exit, ordered Butler out of the vehicle, and arrested both men outside the Cadillac. After Butler and Seabrooks exited the Cadillac, one of the officers looked inside and saw three firearms. The officer testified that the firearms were located: (1) on the driver's side floorboard; (2) on top of a cushioned backrest on the front passenger's seat; and (3) between the driver's seat and the front passenger's seat. The firearm on the front passenger's seat was a semi-automatic pistol stored in

a black gun pouch. The owner of the green truck later confirmed that the firearms were his.

Seabrooks made several statements after his arrest. First, when an officer approached Seabrooks to identify his fingerprints with a portable device, Seabrooks asked about the device. The officer told Seabrooks that the device was for identification and that it would be used to see if Seabrooks touched a gun. Seabrooks responded: "Oh, well, I touched the little gun, Officer . . . . You'll find my fingerprints on the small gun."

Later, during a post-*Miranda* interview, Seabrooks stated that he took the firearms from Butler and placed them in the console of the Cadillac. Seabrooks explained that Butler handed him a black pouch and that he opened the pouch and noticed it contained a semi-automatic pistol. However, Seabrooks asserted that he "[didn't] want no guns around [him], period," so he put the gun and pouch in the center armrest.

During the same interview, Seabrooks stated that he did not know Butler intended to steal firearms from the green truck. Although Seabrooks acknowledged that he remained in the Cadillac while Butler broke into the truck and handed him firearms, Seabrooks nevertheless contended that he neither got out of the car nor participated in the theft. When an officer informed Seabrooks that he was being charged with being a felon in possession of a firearm, Seabrooks adamantly stated that he did not "possess" any of the firearms because he only incidentally handled one firearm before quickly stowing it away from his person.

After the government presented the foregoing testimony, the prosecutor read a stipulation to the jury. The stipulation explained that both Seabrooks and Butler had been convicted of felony offenses and that they were not legally allowed to possess a firearm or ammunition.

At the charge conference, the government requested—and the district court agreed to deliver, over Seabrooks's objection—an aiding and abetting instruction. Although the indictment did not charge Seabrooks with aiding and abetting, the government asked the district court whether the aiding and abetting instruction was applicable to both of Seabrooks's charges. The district court responded that the government could direct the jury to the instruction on both counts.

The district court's aiding and abetting instruction stated:

> It is possible to prove the Defendant guilty of a crime even without evidence that the Defendant personally performed every act charged. Ordinarily, any act a person can do may be done by directing another person or agent or it may be done by acting with or under the direction of others.
>
> A defendant aids and abets another person if the defendant intentionally joins with a person to commit a crime.
>
> A defendant is criminally responsible for the acts of another person if the defendant aids and abets the other person.

6                    Opinion of the Court                    20-13459

A defendant is also responsible if the defendant willfully directs or authorizes the acts of an agent, employee or other associate. But finding that a defendant is criminally responsible for the acts of another person requires proof that the defendant intentionally associated with or participated with the crime, not just proof that the defendant was simply present at the scene of a crime or knew about it. In other words, you must find beyond a reasonable doubt that the defendant was a willful participant and not merely a knowing spectator.

During closing arguments, the government primarily relied on the aiding and abetting instruction in its rebuttal.[1] The prosecutor argued:

> Why did they have the window rolled down? So they could communicate, so that you could sit there, peacefully, look another way, look straight ahead, and say: "There's some weird lady behind us. Be calm. All right. Go ahead." That is aiding and

---

[1] In its initial argument, the government stated:

> He possessed, controlled all of those guns. He placed those guns into the car. He received them from his codefendant, and I would suggest to you that he aided -- not only did he possess the firearms, but he aided and abetted Nigel Butler in stealing those firearms and in possessing those firearms. We know those guns were stolen, we know that he possessed them, and we know that he aided Nigel Butler because he assisted him in that robbery. . . .

abetting. That's why the instruction is there because this story is obvious, and your common sense does not get checked outside that door. He is a lookout. He is helping this crime happen. But folks, the aiding and abetting instruction that you have is only one way of proving this case. There are two ways of proving this case. One is if, when you read the actual possession instruction, and you say: Did he have those guns? Did he really have those guns? Was he just curious? . . .

And I want to be very clear, when you go back to the jury room; about the value of that aiding and abetting instruction. One way of proving this case is solely on the actual possession and constructive possession. If you find that that has happened, that the Defendant has actual possession of the gun, the Defendant is guilty. You don't have to consider aiding and abetting. But if you, for whatever reason, have a question about that, you can move on to aiding and abetting, and you can determine did Nigel Butler help -- did Isaac Seabrooks -- excuse me help Nigel Butler commit this crime? And the answer is: Yes.

Following the government's rebuttal, the jury began its deliberations. About two and a half hours later, the jury delivered a question to the district court. The jury asked:

Are the following considered the same as possession:

– receipt of item

– touch of item

– physical inspection of item

After consulting with the parties, the district court decided to supplement its original possession instruction with language from *United States v. Edwards*, 166 F.3d 1362 (11th Cir. 1999), which Seabrooks had previously requested. The district court told the jury:

> Ladies and Gentlemen, you alone determine the facts of this case. The Court has instructed you on the law related to possession. It is contained in the verbatim instructions, but I will read it again. "The law recognizes several kinds of possession. A person may have actual possession, constructive possession, sole possession, or joint possession. Actual possession of a thing occurs if a person knowingly has direct physical control of it. Constructive possession of a thing occurs if a person does not have actual possession of it, but has the power and the intention to take control of it later. Sole possession of a thing occurs if a person is the only one to possess it. Joint possession of a thing occurs if two or more people share possession of it. The term possession includes actual, constructive, sole, and joint possession."
>
> You have asked a specific question, and Ladies and Gentlemen of the Jury, mere inspection, standing alone, is not sufficient to establish possession. You have been provided with all the law, and I ask that at

20-13459               Opinion of the Court                    9

this time you return to the jury room to continue your deliberations.

Thirty-five minutes later, the jury reached a verdict—guilty on both counts. However, the verdict form did not specify whether the jury found Seabrooks guilty on Count 1 because he actually possessed a firearm or because he aided and abetted Butler's possession of a firearm.

In 2015, the district court sentenced Seabrooks to 188 months' imprisonment on Count 1 and 120 months' imprisonment on Count 2 to run concurrently.[2] Seabrooks's direct appeal followed.

## B. Seabrooks's Direct Appeal

Seabrooks contested his convictions and his 188-month sentence on direct appeal. *Seabrooks*, 839 F.3d at 1332–45. In a published opinion, we affirmed the district court and briefly addressed Seabrooks's challenge to the district court's aiding and abetting instruction under *Rosemond v. United States*, 572 U.S. 65 (2014). In *Rosemond*, the Supreme Court concluded that "an aiding and abetting conviction requires not just an act facilitating one or another element, but also a state of mind extending to the entire crime."

---

[2] As to Count 1, Seabrooks was sentenced as an armed career criminal under 18 U.S.C. § 924(e) rather than under § 924(a)(2). He was sentenced under § 924(a)(2) as to Count 2.

*Id.* at 75–76 (explaining that the defendant's "intent must go to the specific and entire crime charged").

Relying on *Rosemond*, Seabrooks asserted that the district court erred when it gave the aiding and abetting instruction to the jury even though the government had not presented evidence that Seabrooks knew Butler was a convicted felon when the offense occurred. However, because Seabrooks failed to raise his *Rosemond* challenge at trial, we considered only whether the district court plainly erred when it gave the aiding and abetting instruction. We found no plain error because neither this Court nor the Supreme Court had addressed the question of whether the government must prove that the defendant knew the principal was a convicted felon to sustain an aiding and abetting conviction under § 922(g), and the circuits that had addressed the question disagreed. *Seabrooks*, 839 F.3d at 1337 (collecting cases).

## C.  Seabrooks's § 2255 Motion and Appeal

Seabrooks subsequently filed a timely 28 U.S.C. § 2255 motion to vacate, set aside, or correct conviction and sentence. Among other issues, Seabrooks again raised the government's failure to demonstrate that Seabrooks knew Butler was a convicted felon.

While Seabrooks's motion was pending before the district court, the Supreme Court issued its opinion in *Rehaif v. United States*, 139 S. Ct. 2191 (2019). The *Rehaif* Court held that the government must prove that the defendant "knew he belonged to the

relevant category of persons barred from possessing a firearm" in a prosecution under 18 U.S.C. §§ 922(g) and 924(a)(2). *Id.* at 2200. Citing *Rehaif*, Seabrooks filed a notice of case-dispositive, intervening decision before the district court ruled on his motion.

Seabrooks's § 2255 motion was initially addressed by the magistrate judge in a report and recommendation. The magistrate judge recommended that the district court deny Seabrooks's motion, in part because Seabrooks's challenge to the aiding and abetting instruction was procedurally barred. She specifically found that Seabrooks's challenge was procedurally barred because we had decided the issue on direct appeal and Seabrooks had not shown either that *Rehaif* constituted an intervening change in controlling law or a miscarriage of justice. In analyzing this issue, the magistrate judge concluded that *Rehaif*'s rule is not a new rule of constitutional law and that the Supreme Court had not applied *Rehaif* retroactively.

Seabrooks objected to the report and recommendation. He argued that the magistrate judge incorrectly applied the standard for a second or successive § 2255 motion, rather than an initial § 2255 motion. Despite Seabrooks's objection, the district court adopted the report and recommendation, denied Seabrooks's § 2255 motion, and refused to issue a certificate of appealability.

Seabrooks timely appealed the district court's order on his § 2255 motion and moved for a certificate of appealability.[3] We granted Seabrooks's motion for a certificate of appealability on one issue:

> Whether *Rehaif v. United States*, 139 S. Ct. 2191 (2019), applies retroactively to initial 28 U.S.C. § 2255 motions, such that Mr. Seabrooks could overcome the procedural bar that otherwise would apply to Claim 1, as it relates to Count 1, due to the fact that this Court previously decided Claim 1 against Mr. Seabrooks on direct appeal.

## II

In evaluating a district court's denial of a § 2255 motion, we review legal conclusions *de novo* and factual findings for clear error. *Brown v. United States*, 942 F.3d 1069, 1072 (11th Cir. 2019) (per curiam).

## III

Seabrooks's appeal raises three issues: (1) whether *Rehaif* applies retroactively to Seabrooks's initial § 2255 motion; (2) whether Seabrooks's *Rehaif* claim is procedurally barred or procedurally

---

[3] In his motion for a certificate of appealability, Seabrooks challenged only his Count 1 felon-in-possession conviction. He did not contest his Count 2 conviction or sentence for possessing a stolen firearm; therefore, we do not address Count 2 in this appeal.

defaulted; and (3) whether the district court's error in giving the aiding and abetting instruction was harmless.

## A. *Rehaif* applies retroactively to Seabrooks's initial § 2255 motion.

The first issue is whether *Rehaif* applies retroactively to Seabrooks's initial § 2255 motion. Although we have previously analyzed *Rehaif* in the context of an application for leave to file a second or successive § 2255 motion pursuant to §§ 2255(h) and 2244(b)(3)(A),[4] we have yet to analyze a *Rehaif* claim brought in an initial motion to vacate. *See, e.g.*, *In re Palacios*, 931 F.3d 1314 (11th Cir. 2019); *In re Wright*, 942 F.3d 1063 (11th Cir. 2019).

In the case on appeal, the parties agree that the district court improperly relied on the statutory analysis for a second or

---

[4] To file a second or successive motion to vacate, set aside, or correct a federal sentence, a petitioner must first move in the appropriate court of appeals for an order authorizing the district court to consider his successive motion. 28 U.S.C. § 2244(b)(3)(A). Such authorization may be granted only if the appellate court certifies that the second or successive motion contains a claim involving:

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable fact-finder would have found the movant guilty of the offense; or

> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h).

successive § 2255 motion[5] and erroneously determined that *Rehaif* did not apply retroactively to Seabrooks's initial motion. The government specifically concedes that *Rehaif* applies retroactively to initial § 2255 motions because a "Supreme Court decision that changes the substantive reach of a statute by altering the range of conduct or the class of persons that the statute punishes has retroactive effect to cases on collateral review."

Because Seabrooks's conviction is final, he may only rely on a "new rule" announced by the Supreme Court that applies retroactively when challenging his conviction. *See Schriro v. Summerlin*, 542 U.S. 348, 351 (2004). New substantive rules generally apply retroactively. *See id.* at 351. New substantive rules include both "decisions that narrow the scope of a criminal statute by interpreting its terms, as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the [government's] power to punish." *Id.* at 351–52 (citations and footnote omitted). Both new rules of statutory law and new rules of constitutional law apply retroactively to an initial § 2255 motion because they "necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose upon him." *Id.* at 352 (quoting *Bousley v. United States*, 523 U.S. 614, 620 (1998)) (internal quotation marks omitted).

---

[5] *See id.*

In *Rehaif*, the Supreme Court held that the government must prove the defendant knew both that he possessed a firearm and that he belonged to a class of persons prohibited from possessing a firearm to sustain a § 922(g) (felon-in-possession) conviction. *Rehaif*, 139 S. Ct. at 2200; *see also In re Price*, 964 F.3d 1045, 1049 (11th Cir. 2020). Before *Rehaif*, courts routinely held that the government did not have to prove that the defendant knew he belonged to a prohibited class. *See, e.g.*, *United States v. Rehaif*, 888 F.3d 1138 (11th Cir. 2018), *rev'd* 139 S. Ct. 2191 (2019). Consequently, *Rehaif*'s "new rule" alters the range of conduct or the class of persons §§ 922(g) and 924(a)(2) are understood to punish. *See Rehaif*, 139 S. Ct. at 2200; *see also Schriro*, 542 U.S. at 354 ("A decision that modifies the elements of an offense is normally substantive rather than procedural. New elements alter the range of conduct the statute punishes, rendering some formerly unlawful conduct lawful or vice versa."); *In re Palacios*, 931 F.3d at 1315–18 (Rosenbaum, J., concurring); *In re Wright*, 942 F.3d at 1065–69 (Rosenbaum, J., concurring).

As the *Rehaif* rule narrows the scope of §§ 922(g) and 924(a)(2) by interpreting the statutes' terms and modifying the elements of the felon-in-possession offense, we find that *Rehaif* announced a new rule of substantive law that applies retroactively to

Seabrooks's initial § 2255 motion.[6] *See Schriro*, 542 U.S. at 351–52, 354; *see also Bousley*, 523 U.S. at 620–21.

## B. Seabrooks's *Rehaif* claim is neither procedurally barred nor procedurally defaulted.

While the government agrees that *Rehaif* applies retroactively to initial § 2255 motions, it does not concede that Seabrooks is entitled to relief pursuant to *Rehaif*. First, the government argues that Seabrooks's *Rehaif* claim is procedurally defaulted.

The terms "procedurally barred" and "procedurally defaulted" have distinct meanings. A procedural bar prevents a defendant from raising arguments in a § 2255 proceeding that he raised and we rejected on direct appeal. *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014) (collecting cases). A defendant can overcome a procedural bar when, as here, there is an

---

[6] We note that the *Rehaif* Court's analysis primarily relied on Congress's use of the word "knowingly" in § 924(a)(2) whereas Seabrooks was charged and convicted under § 924(e)(1), which lacks an explicit *mens rea* requirement. *Compare* 18 U.S.C. § 924(a)(2) ("Whoever knowingly violates subsection . . . (g) . . . of section 922. . .") *with* 18 U.S.C. § 924(e)(1) ("In the case of a person who violates section 922(g) . . ."); *see Rehaif*, 139 S. Ct. at 2194–200; *see also Greer v. United States*, 141 S. Ct. 2090, 2095 (2021). Ordinarily, § 922(g)(1) sets forth the felon-in-possession offense, and § 924(a)(2) supplies the penalty for that offense. However, if a defendant convicted under § 922(g) has three or more prior convictions for serious drug offenses or violent felonies, he may be subject to a sentencing enhancement pursuant to § 924(e). Although Seabrooks was charged and convicted pursuant to § 922(g) and § 924(e)(1) rather than § 922(g) and § 924(a)(2), we need not consider this distinction because the government did not brief it on appeal.

intervening change in law. *See Davis v. United States*, 417 U.S. 333, 342 (1974).

By contrast, a "procedural default" occurs when a defendant raises a new challenge to his conviction or sentence in a § 2255 motion. *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004). If a defendant fails to raise an issue on direct appeal, he may not present the issue in a § 2255 proceeding unless his procedural default is excused. *McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011). To overcome a procedural default, a defendant must show either (1) cause and prejudice, or (2) a miscarriage of justice, or actual innocence. *Id.*

In our order granting Seabrooks's motion for a certificate of appealability, we asked whether Seabrooks could overcome the procedural bar that otherwise would apply to his challenge to the aiding and abetting instruction. However, it's not clear to us that the government raised this issue or argued that Seabrooks's claim is procedurally barred in its appellate brief. But even assuming it adequately did so and that Seabrooks procedurally defaulted his claim that the government had to prove that he knew Butler was a convicted felon, any resulting procedural bar must be excused under *Davis v. United States*, 417 U.S. 333 (1974), because *Rehaif* caused an intervening change in the law.

But the government also contends that Seabrooks's *Rehaif* claim is procedurally defaulted because he did not challenge his alleged principal liability and personal possession of the firearms on direct appeal. In response, Seabrooks argues that the government

waived this affirmative defense because it failed to raise it before the district court.

We agree that the government waived the affirmative defense of procedural default. *See Foster v. United States*, 996 F.3d 1100, 1106–07 (11th Cir. 2021) (collecting cases). The government's response to Seabrooks's § 2255 motion included only passing references to procedural default, and the district court did not raise the defense *sua sponte*. Because the government failed to raise this affirmative defense in the lower court, it cannot benefit from the defense now.[7] *See Howard v. United States*, 374 F.3d 1068, 1073 (11th Cir. 2004). Accordingly, Seabrooks's *Rehaif* claim is neither procedurally barred nor procedurally defaulted.

## C. The district court's error was not harmless.

Turning to the merits of Seabrooks's *Rehaif* claim, the parties agree that the harmless error standard of review applies. The government also seems to agree that the district court's aiding and abetting instruction was improper under *Rehaif* because the government failed to present evidence demonstrating that Seabrooks knew Butler was a convicted felon at the time of the offense during Seabrooks's trial. Nevertheless, the government argues that the

---

[7] Even if the government had not waived procedural default, the fact that Seabrooks has not challenged his principal liability is largely irrelevant given the jury's general verdict. *See infra* Section III.C.

district court's error was harmless because "the record amply supports" Seabrooks's conviction on the basis of principal liability.

We recently considered whether instructing a jury "on a constitutionally invalid predicate as one of several potential alternative predicates" was harmless. *See Granda v. United States*, 990 F.3d 1272, 1292 (11th Cir. 2021). In *Granda*, we explained that relief under the harmless error standard is only proper if we have "grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict." *Id.* (quoting *Davis v. Ayala*, 576 U.S. 257, 267–68 (2015)) (internal quotation marks omitted). Specifically, there "must be more than a reasonable possibility" that the error was harmful. *Id.* (quoting *Davis*, 576 U.S. at 267–68). In other words, we may only order relief if the error "resulted in actual prejudice." *Id.* (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)) (internal quotation marks omitted).

As the reviewing court, we must "ask directly" whether the district court's error substantially influenced the jury's verdict in Seabrooks's case. *Id.* at 1293 (quoting *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995)). Upon review of the record, we have grave doubt about whether the *Rehaif* error led to Seabrooks's felon-in-possession conviction. *Id.* at 1294 (explaining that it is proper to review the record to determine "whether the jury instead (or also) found the defendant guilty under a valid theory").

From the outset, the government's principal liability evidence was weak. For that reason, the government offered aiding

and abetting as an alternative theory of liability—despite the fact that Seabrooks was not charged with aiding and abetting in the indictment. After the district court gave the aiding and abetting instruction over Seabrooks's objection, the government directed the jury's attention to "the value" of the instruction, emphasizing that the instruction was available to the jury if it had "a question" about Seabrooks's actual possession.

The record suggests that the jury followed the government's guidance precisely. After two and a half hours of deliberations, the jury asked a question related to Seabrooks's principal liability; specifically, whether certain actions—receipt of item, touch of item, physical inspection of item—constitute possession. In response, the district court informed the jury that mere inspection, standing alone, is not sufficient to establish possession. Thirty-five minutes later, the jury reached a guilty verdict on both counts.

Although the verdict did not specify whether the jury considered only principal liability, we conclude that there is more than a reasonable possibility that the jury's conviction relied on the invalid aiding and abetting instruction. It is likely that the jury listened to the government's guidance, asked a question about Seabrooks's principal liability, received an answer suggesting Seabrooks could not be convicted under that theory, opted for the aiding and abetting instruction, and convicted Seabrooks based on that theory of liability. As a result, we have grave doubts about whether the district court's error substantially influenced the jury's

verdict, and thus we find the error actually prejudiced Seabrooks, and cannot be deemed harmless.

## IV

In conclusion, we hold that *Rehaif* applies retroactively to Seabrooks's initial § 2255 motion, that Seabrooks's *Rehaif* claim is neither procedurally barred nor procedurally defaulted, and that the district court's error was not harmless. Accordingly, we reverse the district court's denial of Seabrooks's § 2255 motion, vacate Seabrooks's felon-in-possession conviction, and remand for further proceedings consistent with this opinion.

**REVERSED, VACATED, and REMANDED.**