[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14943

_____

D.C. Docket Nos. 0:19-cv-62070-WPD; 0:07-cr-60238-WPD-3

WADE PARKER,

Petitioner - Appellant,

versus

UNITED STATES OF AMERICA,

Respondent - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 6, 2021)

Before LAGOA, HULL, and MARCUS, Circuit Judges.

MARCUS, Circuit Judge:

An ATF reverse sting operation caught Wade Parker in the midst of an effort

to commit armed robbery of a house he believed held the cocaine stash of a

Colombian cartel.  A jury convicted Parker, among other things, of both conspiring to use and using a firearm during a crime of violence or drug trafficking offense in violation of 18 U.S.C. § 924(o) and § 924(c).  In Parker's first visit to our Court, we affirmed his convictions and the ensuing sentence.  United States v. Parker, 376 F. App'x 1, 3 (11th Cir. 2010).  Now, Parker appeals the district court's rejection of his § 2255 collateral attack on these convictions.

Parker claims that under United States v. Davis, 139 S. Ct. 2319 (2019), the only crime-of-violence offense that the jury could have relied on to predicate the challenged convictions -- conspiracy to commit Hobbs Act robbery -- is not actually a crime of violence.  He's right about that, but his § 2255 motion still fails.  In addition to the Hobbs Act conspiracy, the district court instructed the jury that it could predicate the challenged § 924(c) and (o) convictions on two drug trafficking offenses, attempt and conspiracy to possess cocaine with intent to distribute.  Given the facts and circumstances presented at trial, the jury could not have relied on the invalid Hobbs Act conspiracy predicate without also relying on the drug trafficking offenses, each of which remain valid predicates.  Under Granda v. United States, --- F.3d ----, No. 17-15194, 2021 WL 923282, at *9 (11th Cir. Mar. 11, 2021), this defeats Parker's claims.  We affirm.

2

I.

A.

These are the essential facts surrounding this case. In the summer of 2007, an ATF confidential informant ("CI") told Ishwade Subran that he knew someone who was looking for help robbing some 15 kilograms of cocaine from a local stash house. Subran and his associate Patrick Aiken met with the CI and an undercover ATF agent ("UC") at a Sunrise, Florida restaurant to discuss the robbery. The UC introduced himself as a disgruntled employee of a Colombian drug cartel and asked if Subran and Aiken would rob his bosses' stash house, which would be protected by one or two armed guards. The undercover agent explained that he was a courier who transported kilogram quantities of cocaine for the cartel, and that he had seen at least 15 kilograms of cocaine in its stash houses. Subran and Aiken agreed, and indicated they would have no problem dealing with the armed guards. Parker, 376 F. App'x at 6.

A few days later, the crew met again for further planning. This time, Subran and Aiken brought along appellant Wade Parker, who, they said, had traveled from New York to Miami for this meeting. Aiken explained that he and Parker had conducted robberies in New York and Miami. The UC went over the plan (including the likely need to account for an armed guard) with Subran, Aiken, and Parker, who indicated they were ready to proceed with the robbery. Subran

3

suggested entering the stash house as the UC visited it to retrieve cocaine he was supposed to deliver to cartel customers. At a third meeting, the UC told the same group that the robbery would not be easy, but Subran and Aiken insisted that it would. Id.

On September 18, the UC called Subran to tell him that the cocaine shipment would arrive the next day. The UC told the crew to meet the CI, who would then lead them to meet with him in order to learn the location of the stash house. The UC had explained that the cartel used different stash houses for each delivery, so he would not learn the location in advance. The CI led the crew to a gas station, where they met the UC. Aiken drove a silver Infiniti, with Parker riding shotgun and Subran in the backseat. A new member of the crew, Anthony Foster, joined them in a black Honda. The UC then led the group to his "undercover business," where he reviewed the plan to rob 15 kilograms of cocaine. Id. at 7. Parker assured the UC that the newcomer Foster knew "everything," and that Foster would execute the robbery with Parker and Aiken (Subran would serve as the getaway driver). Parker further detailed the plan, pointing at Foster "and stat[ing] that both he and Foster would enter the house." Id. at 8. As the crew waited for the cartel to phone in the stash house location, police moved in and arrested Subran, Aiken, Parker, and Foster. Id. at 7.

4

After being given <u>Miranda</u> warnings, Parker admitted to a federal agent that he had met with the UC in order to rob 15 kilograms of cocaine. <u>Id.</u> at 8. Another agent found a loaded Walther PPK/S .380 caliber pistol between the driver's seat and the center console in the Infiniti Parker had arrived in. The car also contained a rope, duct tape, black gloves, and Foster's Jamaican passport. Foster carried a loaded Smith & Wesson 9mm model 915 pistol in his waistband. <u>Parker</u>, 376 F. App'x at 9.

B.

A grand jury sitting in the Southern District of Florida returned a superseding indictment charging Parker with:

- Count 1: Conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a);

- Count 2: Conspiracy to possess with intent to distribute at least five kilograms of cocaine, in violation of 21 U.S.C. § 846;

- Count 3: Attempt to possess with intent to distribute at least five kilograms or more of cocaine, in violation of 21 U.S.C. § 841(b)(1)(A);

- Count 4: conspiracy to use and carry a firearm during and in relation to a crime of violence as set forth in Count 1 and a drug trafficking offense as set forth in Counts 2 and 3, in violation of 18 U.S.C. § 924(o);

- Count 5: Using and carrying a firearm during and in relation to a crime of violence as set forth in Count 1 and a drug trafficking offense as set forth in Counts 2 and 3, in violation of 18 U.S.C. § 924(c)(1) and 18 U.S.C. § 2;

- Count 6: Possessing a firearm as a convicted felon, in violation of 18 U.S.C. §§ 922(g) and 924(e)[1];

- Count 7: Possessing a firearm as an alien unlawfully inside the United States, in violation of 18 U.S.C. § 922(g)(5)[2]; and

- Count 8: Unlawfully entering the United States after having previously been removed from the United States, in violation of 8 U.S.C. § 1326(a).

Parker, 376 F. App'x at 3.  The indictment also charged Aiken, Subran, and Foster in Counts 1–6 (but not in Counts 7 and 8).  Aiken pleaded guilty, but the rest of the defendants proceeded to trial.  Parker, 376 F. App'x at 5.  The jury heard testimony from the UC and other agents recounting the facts as we have described them.  Id. at 6–8.

Regarding Count 4 -- the § 924(o) count -- the district court instructed the jury that it had to find beyond a reasonable doubt that the defendants conspired "to commit the crime of violence charged in Count 1" or "to commit the drug trafficking offense charged in either Counts 2 or 3," and that they knowingly carried or possessed a firearm while doing so.[3]  As for Count 5 -- the § 924(c)

---

[1] Parker had previously been convicted of attempted second degree assault, criminal possession of a weapon, and attempted criminal possession of a weapon in New York.

[2] Parker, a Jamaican immigrant to the United States, was deported in 2000 after serving his sentence in New York for criminal possession of a weapon.  At some point he returned.

[3] In relevant part, § 924(o) provides that "[a] person who conspires to commit an offense under subsection (c) shall be imprisoned for not more than 20 years, fined under this title, or both."  18 U.S.C. § 924(o).  In turn, § 924(c) provides:

> Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in

count -- the judge instructed the jury that it had to find beyond a reasonable doubt that the defendants "committed the crime of violence charged in Count 1 of the Indictment or that the [defendants] committed the drug trafficking offense charged in either Counts 2 or 3 of the indictment" and possessed or carried a firearm during the crime.  The court further instructed:

> The indictment charges that each Defendant knowingly carried a firearm during and in relation to a crime of violence and a drug trafficking offense and possessed a firearm in furtherance of a crime of violence and a drug trafficking offense.  It is charged, in other words, that the defendant violated the law as charged in Count 5 in different ways.  It is not necessary, however, for the Government to prove that the defendant violated the law in all of those ways.  It is sufficient if the Government proves, beyond a reasonable doubt, that the Defendants knowingly violated the law in some way; but, in that event, you must unanimously agree upon the way in which the Defendants committed the violation.

The district court did not include this unanimity instruction with its Count 4 instructions.

---

furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime--

> (i) be sentenced to a term of imprisonment of not less than 5 years . . . .

Id. § 924(c)(1)(A).  The statute defines "drug trafficking crime" (in relevant part) as "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.)."  Id. § 924(c)(2).  "'[C]rime of violence' means an offense that is a felony and:

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Id. § 924(c)(3).  We often refer to subsection (A) as the "elements clause" and to subsection (B) as the "residual clause."

The jury returned a general verdict finding Parker guilty on all counts. The district court sentenced Parker to a total prison term of 264 months: 204-month terms served concurrently for each of Counts 1–4 and 8; 120-month terms served concurrently for each of Counts 6 and 7; and a 60-month term for Count 5 served consecutively. The court also imposed a $100 special assessment for each count.

Parker appealed, but this Court affirmed his convictions and sentence. Parker, 376 F. App'x at 3. Notably, Parker did not argue that his Count 4 or Count 5 convictions were based on invalid predicates. Later, based on intervening amendments to the Sentencing Guidelines, the district court granted Parker's motion to reduce his sentence to a 164-month term and a consecutive 60-month term for a total of 224 months of imprisonment.

Parker filed an initial § 2255 motion raising issues not relevant here, which the district court denied. He unsuccessfully sought leave to file successive petitions four times. In re: Wade Parker, No. 16-13548 (11th Cir. June 30, 2016); In re: Wade Parker, No.16-15600 (11th Cir. Sept. 21, 2016); In re: Wade Parker, No. 17-13566 (11th Cir. Sept. 12, 2017); In re: Wade Parker, No. 19-11094 (11th Cir. Apr. 12, 2019). Then, in United States v. Davis, 139 S. Ct. 2319, 2336 (2019), the Supreme Court invalidated the § 924(c) residual clause as unconstitutionally vague. Parker petitioned this Court for leave to file a second or successive § 2255 motion, arguing that his Count 4 and Count 5 convictions should be vacated

8

because the supporting predicate may have qualified only under § 924(c)'s invalid residual clause -- in particular, the jury may have used Count 1, conspiracy to commit Hobbs Act robbery, as its supporting predicate. Hobbs Act conspiracy does not qualify as a crime of violence predicate under the § 924(c)(3) elements clause. See Brown v. United States, 942 F.3d 1069, 1075 (11th Cir. 2019). Since the indictment, general verdict, and jury instructions left open the possibility that the jury had relied on an invalid predicate offense to convict him of the § 924(o) and (c) offenses, Parker argued that these convictions must be set aside. We granted Parker's application to file a successive § 2255 motion. The government opposed Parker's motion on both procedural default and merits grounds.

The district court denied Parker's petition. It held that since "the Hobbs Act Conspiracy was inextricably intertwined with the drug trafficking charges in Counts Two and Three," "there is no reasonable likelihood that the jury based its verdicts solely on the predicate Hobbs Act Conspiracy and not the two drug trafficking predicates." The district court explained that "it is clear that absen[t] a strained interpretation of the jury's verdict, the jury had to have found the drug trafficking predicate acts." The court nevertheless granted a certificate of appealability because Parker had "made an appropriate showing on the issue of whether the jury verdict indicates that his convictions on Counts Four and Five were predicated on a drug trafficking crime." Parker timely appealed.

II.

We affirm the district court because Parker cannot overcome the procedural default of his claim and because even if he could, he suffered no harm from the inclusion of an invalid predicate offense, Hobbs Act conspiracy, in his indictment and jury instructions.  Both conclusions follow from the same feature of Parker's case: the Hobbs Act conspiracy was inextricably intertwined with Parker's conspiracy and attempt to possess with intent to distribute cocaine (Counts 2 and 3), convictions Parker does not dispute are valid drug trafficking predicates for his Count 4 and Count 5 convictions.

A.

The doctrine of procedural default bars Parker's claim.  Parker did not argue during his original proceedings that his § 924(c) and (o) convictions must be vacated because the § 924(c)(3)(B) residual clause was unconstitutionally vague. He therefore procedurally defaulted this claim and may not obtain collateral review unless he can either (1) show cause to excuse the default and actual prejudice from the claimed error, or (2) show that he is actually innocent of the § 924(o) conviction.  Fordham v. United States, 706 F.3d 1345, 1349 (11th Cir. 2013).

Parker advances (only) an actual innocence argument, but it fails to persuade.  Like the petitioner in Granda, 2021 WL 923282 at *10, Parker admits that this argument, and his ability to overcome procedural default, rises and falls

with the merits of his claim that his Count 4 and 5 convictions are predicated on the invalid predicate conviction for conspiracy to commit Hobbs Act robbery.

We recently rejected a materially indistinguishable claim in Granda, and the similarity between that case and Parker's compels the same result here. It is undeniable on this record that Parker's valid drug trafficking predicates are inextricably intertwined with the invalid Hobbs Act conspiracy predicate. The evidence adduced at trial showed that Parker was a lead participant in a plan to rob at gunpoint a stash house that held at least 15 kilograms of cocaine. See, e.g., Parker, 376 F. App'x at 8 (describing the UC's testimony that Parker demonstrated the method by which he and Foster would enter the house, which they knew at least one armed man would be guarding). Agents found a firearm on the person of a co-conspirator and another in a car in which Parker had ridden. Id. at 7. Based on this robbery scheme, the jury found Parker guilty of each of three potential predicate offenses -- conspiracy to rob the stash house and conspiracy and an attempt to possess with intent to distribute the cocaine in the house. It is inconceivable that the jury could have found that Parker conspired to, and did, use and carry a firearm in furtherance of his conspiracy to rob the house (the invalid predicate) without also finding at the same time that he did so in furtherance of his conspiracy and attempt to obtain the cocaine in the same house (both valid predicates). Cf. United States v. Cannon, 987 F.3d 924, 948 (11th Cir. 2021)

11

("The cocaine the defendants were planning to rob from the narcotics traffickers was the same cocaine they were planning to possess with the intent to distribute. Undisputedly, the goal of the robbery scheme was to steal cocaine from a stash house so they could then distribute it themselves. . . . No reasonable juror could have found that [the defendants] carried their firearms in relation to the Hobbs Act robbery conspiracy but not the cocaine conspiracy.").

Similarly, in Granda, we held that the jury could not have found that an invalid Hobbs Act conspiracy predicate supported a § 924(o) conviction without also finding that valid attempted robbery, attempted carjacking, attempted possession of cocaine with intent to distribute, and conspiracy to possess cocaine with intent to distribute predicates did so: each of the predicate offenses arose out of the same plan to rob a cocaine stash truck. Granda, 2021 WL 923282 at *8, *10. We observed that "[t]he objective of the robbery and the carjacking was the same: to obtain and sell the multi-kilogram quantity of cocaine that was to be taken by force from the truck. So the jury could not have concluded that Granda conspired to possess a firearm in furtherance of his robbery conspiracy without also finding at the same time that he conspired to possess the firearm in furtherance of his conspiracy and attempt to obtain and distribute the cocaine, his attempt at carjacking, and the attempt at the robbery itself." Id. at *8.

12

Parker does not point to anything in the trial record that would suggest the jurors somehow distinguished between the alternative predicate crimes. Notably, Parker's position on this point is even weaker than Granda's, who claimed that his acquittal on a § 924(c) charge somehow indicated that the jury predicated his § 924(o) conviction on a Hobbs Act conspiracy predicate instead of on "substantive" alternative predicates. Id. at *9. Unlike Granda, Parker was convicted of both § 924(o) and (c) charges; he therefore cannot similarly argue it is more likely that the jury predicated these convictions on a robbery conspiracy offense than on the "substantive" drug trafficking offenses.

To be sure, Parker's jury instructions suffered from a defect not present in Granda. On Count 4, the district court failed to instruct the jury that it had to unanimously decide which predicate or predicates supported the conviction. Id. at *9 (relying in part on a unanimity instruction to conclude "that the jurors did not split into two camps, one of which found that Granda conspired to possess a firearm in furtherance of one or more valid predicates while the other found Granda conspired to possess a firearm only in furtherance of the Hobbs Act conspiracy"). Thus, Parker argues that "less than twelve jurors could have convicted based on use of the firearm during and in relation to the Hobbs Act conspiracy, the Hobbs Act robbery or the drug trafficking crime." But the record makes clear that this did not happen. The predicate offenses were inextricably

13

intertwined so that if the jurors found one applicable -- which, given their guilty verdicts on Counts 4 and 5, we know they did -- they had to reach the same conclusion with respect to the others. See id. (even apart from the unanimity instruction present in that case, the inextricability of Granda's predicate offenses suggested that the jurors did not split among predicates).

Parker objects to reliance on the factual overlap among his predicate offenses, but in support offers only a theory we rejected in Granda: that the "categorical approach" applies and requires us to presume that his Count 4 and 5 convictions were predicated on the least serious of the potential predicates, which he assumes is the Hobbs Act conspiracy charged in Count 1. The categorical approach is "a method for determining whether a conviction under a particular statute qualifies as a predicate offense under a particular definitional clause." Granda, 2021 WL 923282 at *13. Thus, in Granda, we declined to extend the categorical approach to the distinct context of determining on which of several alternative predicates a jury's general verdict relied. Id. Granda also makes clear that looking at the record to ascertain whether Parker has met his burden to show that the jury relied solely on an invalid predicate is not judicial factfinding of the sort held to violate the Sixth Amendment in Alleyne v. United States, 570 U.S. 99, 114–16 (2013). See Granda, 2021 WL 923282 at *13. Of course, Granda reached this conclusion in the context of a harmless error determination, which represented

14

a conclusion of law rather than fact.  Id.  But the Alleyne question here is not meaningfully different.  To evaluate Parker's actual innocence claim, we must examine the record to discern what facts the jury already found.  We need not, and do not, find any new facts that aggravate Parker's punishment in violation of Alleyne.

Nor, contrary to Parker's argument, does In re Gomez, 830 F.3d 1225, 1228 (11th Cir. 2016) -- which held that a petitioner in a similar case had made the prima facie showing necessary for permission to file a second or successive § 2255 motion -- "stand for the proposition that a court may not inquire as to which of several alternative predicates actually supplied the basis for a § 924(c) (or (o)) conviction or that a court is constrained to assume the verdict rested on the least culpable predicate offense."  Granda, 2021 WL 923282 at *13.  Parker's appeal to the categorical approach thus misses the mark, and he cannot show actual innocence.

Parker does not argue that he can excuse his procedural default under the cause and prejudice standard, nor could he.  Granda held that a vagueness-based challenge to the § 924(c)(3)(B) residual clause was not sufficiently novel to establish cause, and the inextricability of Parker's valid and invalid predicate offenses would prevent him from showing prejudice.  2021 WL 923282 at *7–10.

15

B.

Even if Parker could overcome procedural default, he could not prevail on the merits of his claim. For the same reason Parker cannot show actual innocence -- the jury could not have found that Parker's gun use or gun conspiracy was connected to his conspiracy to rob the stash house without also finding that they were connected to his conspiracy and attempt to possess with intent to distribute the cocaine he planned to rob from the same stash house -- the inclusion of an invalid predicate offense in the indictment and jury instructions was harmless. There is no real possibility that Parker's Count 4 and Count 5 convictions rested solely on the invalid Hobbs Act conspiracy predicate. See Davis v. Ayala, 576 U.S. 257, 267–68 (2015) (internal quotation marks and citations omitted) ("[R]elief is proper [on collateral review] only if the . . . court has grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict. There must be more than a reasonable possibility that the error was harmful."); Granda, 2021 WL 923282 at *10–11.

We held as much on materially similar facts in Granda. Id. at *11. Rather than attempting to distinguish Granda on its facts with respect to harmless error, Parker argues that we should not follow Granda because it conflicts with our earlier decision in Parker v. Sec'y for Dep't of Corr., 331 F.3d 764, 778–79 (11th Cir. 2003) (holding that, in the context of a general verdict, "error with respect to

16

one independent basis [for the verdict] is not rendered harmless solely because of the availability of another independent basis where it is impossible to say on which basis the jury's verdict rests").  But Granda directly addressed Parker and held that under the Supreme Court's intervening decision in Hedgpeth v. Pulido, 555 U.S. 57, 58, 62 (2008) (per curiam), the harmless error inquiry must involve a "look at the record to determine whether the invalid predicate actually prejudiced the petitioner -- that is, actually led to his conviction -- or whether the jury instead (or also) found the defendant guilty under a valid theory."  2021 WL 923282 at *12.  As we have explained, the record in this case makes clear that if the jury relied on the invalid Hobbs Act conspiracy predicate, it also relied on the valid drug trafficking predicates.  The inclusion of Hobbs Act conspiracy as a potential predicate was therefore harmless.

Thus, even if Parker could overcome his procedural default -- and as we see it, he cannot -- he could not prevail on the merits because he did not suffer harm. We **AFFIRM**.