RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 23a0068p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

LEONARD BAUGH,

*Petitioner-Appellant,*

v.

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

No. 21-5230

Appeal from the United States District Court for the Middle District of Tennessee at Nashville.
Nos. 3:09-cr-00240; 3:16-cv-02628—Aleta Arthur Trauger, District Judge.

Argued: March 10, 2023

Decided and Filed: April 10, 2023

Before: GIBBONS, BUSH, and MATHIS, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Michael C. Holley, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Nashville, Tennessee, for Appellant. Michael A. Rotker, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Michael C. Holley, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Nashville, Tennessee, for Appellant. Michael A. Rotker, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Cecil W. VanDevender, UNITED STATES ATTORNEY'S OFFICE, Nashville, Tennessee, for Appellee.

GIBBONS, J., delivered the opinion of the court in which BUSH, J., joined. MATHIS, J. (pp. 9–15), delivered a separate dissenting opinion.

---

**OPINION**

---

JULIA SMITH GIBBONS, Circuit Judge.  Leonard Baugh coordinated a plan to use a gun to steal cocaine from a drug dealer and resell it.  Based on this conduct, a federal jury convicted him of conspiracy to possess with intent to distribute cocaine, conspiracy to commit Hobbs Act robbery, and possessing a firearm in furtherance of a crime of violence or a drug trafficking crime in violation of 18 U.S.C. § 924(c).  In accordance with the law at the time, the jury was instructed that either the cocaine conspiracy or the Hobbs Act robbery conspiracy could furnish the predicate offense for the § 924(c) count.  The Supreme Court subsequently held that the residual clause pursuant to which Baugh's Hobbs Act robbery conspiracy conviction qualified as a crime of violence was unconstitutionally vague.  Baugh filed a motion to vacate his § 924(c) conviction, arguing that it rested on an invalid predicate.  The district court denied that relief.  Because there is no reason to believe that the jury based Baugh's § 924(c) conviction on only his Hobbs Act robbery conspiracy conviction and not also on his cocaine conspiracy conviction, we affirm.

I.

The facts relevant to this appeal are not disputed.  As Baugh puts it,

> On about September 10, 2009, Baugh arranged a putative drug deal with [Kenneth Holden] in which Baugh's co-conspirators would buy six ounces of cocaine from [Holden].  But the actual plan was to rob [Holden] of the cocaine.  At least one co-conspirator, Paul McQuiddy, acquired a gun to help rob [Holden], but delays caused the drug deal to fall through.  The plan had been to resell the cocaine if they had gotten any.

CA6 R. 15, Appellant Br., at 4-5.  Based on this conduct, a federal jury convicted Baugh of one count of conspiracy to possess with intent to distribute cocaine, one count of conspiracy to commit Hobbs Act robbery, and one count of possessing firearms in furtherance of a drug offense or crime of violence pursuant to § 924(c) on an aiding and abetting theory of liability.  The district court instructed the jury, and the prosecutor stated in his closing, that the jury could

use either the cocaine conspiracy or the Hobbs Act robbery conspiracy as the predicate for the § 924(c) count.

Based on the same plan to obtain cocaine from Holden, the jury also convicted Omega Harris, one of Baugh's co-defendants, of conspiracy to possess with intent to distribute cocaine. However, the jury acquitted Harris of Hobbs Act robbery conspiracy and the § 924(c) count. Harris had argued to the jury that even if he knowingly joined a conspiracy to obtain cocaine for resale, the government had not proven that he also knew about a plan to get the cocaine by means of a robbery involving a gun as opposed to merely purchasing the cocaine from Holden.

After Baugh's convictions became final, the Supreme Court decided *United States v. Davis*, 139 S. Ct. 2319 (2019). In *Davis*, the Supreme Court held that § 924(c)(3)(B), the residual clause under which Baugh's Hobbs Act robbery conspiracy conviction qualified as a "crime of violence," is unconstitutionally vague. *Id.* at 2336. Thus, under *Davis*, Baugh's Hobbs Act robbery conspiracy conviction no longer constitutes a valid predicate for his § 924(c) conviction. *See In re Franklin*, 950 F.3d 909, 911 (6th Cir. 2020) (per curiam) (holding *Davis* applies retroactively).

Pursuant to 28 U.S.C. § 2255, Baugh filed a motion in the district court to vacate his § 924(c) conviction. The district court denied that relief, reasoning that Baugh's § 924(c) conviction rested not only on the invalid Hobbs Act robbery conspiracy predicate, but also on the valid cocaine conspiracy predicate. Baugh timely appealed.

II.

Whether a defendant's conviction rests on the application of an unconstitutionally vague statute in violation of the defendant's due process rights is a legal question that we review de novo. *See Harris v. United States*, 19 F.4th 863, 866 (6th Cir. 2021).

III.

As an initial matter, the government argues that Baugh's request to vacate the § 924(c) count is procedurally defaulted because Baugh failed to raise it at trial or on direct appeal. The government admits, though, that it also failed to raise this procedural default argument in the

district court in response to Baugh's § 2255 motion. The government characterizes this failure as "an oversight" without further explanation. CA6 R. 23, Corr. Appellee Br., at 29. We agree with Baugh that this is not an "exceptional case" where we should excuse the government's forfeiture of its procedural default argument. *See Cartwright v. United States*, 12 F.4th 572, 581 (6th 2021) (quoting *Greer v. United States*, 938 F.3d 766, 770 (6th Cir. 2019)). We therefore proceed to the merits.

Under *Stromberg v. California*, 283 U.S. 359, 368 (1931), a conviction under a general verdict that may have rested on an unlawful ground violates a defendant's constitutional right to due process. In this case, the government concedes that a *Stromberg* violation occurred when the jury was instructed that it could base Baugh's conviction for the § 924(c) count solely on a conviction for Hobbs Act robbery conspiracy. But when a defendant seeks federal habeas relief under § 2255 based on a *Stromberg* error, we also consider whether the constitutional error was harmless under the standards articulated by the Supreme Court for the analogous state habeas context in *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993).[1] *See Hedgpeth v. Pulido*, 555 U.S. 57, 61 (2008) (applying *Brecht* in state habeas case where defendant sought relief for *Stromberg* error); *Murr v. United States*, 200 F.3d 895, 906 (6th Cir. 2000) (applying *Brecht* in § 2255 case). Under *Brecht*, relief for a constitutional violation is proper only if the error "had substantial and injurious effect or influence in determining the jury's verdict." 507 U.S. at 623.

The parties cite, and we have found, no case from this circuit that addresses whether a *Stromberg* error was harmless where the jury convicted a defendant of two different offenses on

---

[1]In his principal brief on appeal, although not in his reply or at oral argument, Baugh says that we should not consider whether the error was harmless because of statements in *Stromberg* and *Leary v. United States*, 395 U.S. 6, 31-32 (1969), to the effect that a conviction cannot stand if any of the grounds on which it might rest is unconstitutional. We reject this argument. In *Hedgpeth v. Pulido*, 555 U.S. 57 (2008), which postdates both *Stromberg* and *Leary*, the Supreme Court held that harmless error review applies where "a jury [was] instructed on multiple theories of guilt, one of which is improper." *Id.* at 61. Baugh argues that *Hedgpeth* is inapplicable because one of the alternative grounds for the conviction at issue in *Hedgpeth* was invalid under state law rather than the federal constitution. Baugh cites, and we perceive, nothing in *Hedgpeth* or any other case to suggest that this distinction matters given that a *Stromberg* claim always asserts a federal constitutional violation. We therefore conclude that Baugh's claim based on a *Stromberg* violation is reviewable for harmless error under the *Brecht* standard. *See United States v. Jones*, 935 F.3d 266, 270 (5th Cir. 2019) (rejecting argument that *Stromberg* error is structural such that defendant need not show prejudice); *Granda v. United States*, 990 F.3d 1272, 1294 (11th Cir. 2021) (applying *Brecht*).

which it might have predicated his § 924(c) conviction and only one of those offenses remains a valid predicate after *Davis.* However, several of our sister circuits have considered such situations, and they have converged on the general parameters that guide our analysis here. In cases where the conduct underlying the valid predicate offense was "inextricably intertwined" with the conduct underlying the invalid predicate offense, the *Stromberg* violation was harmless because there is no reason to fear that the jury convicted the defendant of possessing a gun in furtherance of the invalid predicate but not the valid one.[2] *See Granda v. United States*, 990 F.3d 1272, 1293 (11th Cir. 2021) (*Stromberg* error harmless where drug trafficking conspiracy and Hobbs Act robbery conspiracy were both based on plan to steal and resell drugs using guns); *Parker v. United States*, 993 F.3d 1257, 1265 (11th Cir. 2021) (same); *Foster v. United States*, 996 F.3d 1100, 1107 (11th Cir. 2021) (same). On the other hand, a *Stromberg* error may not have been harmless in cases where the invalid predicate offense encompassed conduct beyond the scope of the valid predicate offense. *See United States v. Heyward*, 3 F.4th 75, 81-83 (2d Cir. 2021) (*Stromberg* error not harmless where invalid conspiracy predicate included use of guns to commit acts of inter-gang violence that the jury could have found were unrelated to valid drug trafficking conspiracy predicate); *United States v. Jones*, 935 F.3d 266, 273-74 (5th Cir. 2019) (same).

Here, Baugh's participation in the conspiracy to possess with intent to distribute cocaine was inextricably intertwined with his participation in the Hobbs Act robbery conspiracy. Baugh

---

[2]The dissent argues that analyzing whether offense conduct underlying the invalid predicate offense was "inextricably intertwined" with offense conduct underlying the valid predicate offense impermissibly substitutes judges' own view of the evidence for the jury's perspective. On the contrary, the analyses employed by our sister courts in the cases discussed above, whether they use the words "inextricably intertwined" or not, ask whether the record furnished the jury with any *basis* to conclude that a defendant possessed a gun in furtherance of the invalid but not the valid predicate offense. That is the right question in harmless-error analysis, which necessarily consists in drawing inferences from the record about what the jury concluded. *See Brecht*, 507 U.S. at 629 ("Trial error occurs during the presentation of the case to the jury, and is amenable to harmless-error analysis because it may be quantitatively assessed in the context of other evidence presented in order to determine the effect it had on the trial.") (cleaned up). In the same vein, asking whether the offense conduct for the two potential predicate offenses was "inextricably intertwined" does not conflate the sufficiency of evidence with the effect of the error on the jury, as the dissent suggests. Where the record affords no basis for the jury to distinguish between gun possession in furtherance of a valid and an invalid predicate offense, the *Stromberg* error is harmless because it did not affect the jury's verdict, not because sufficient evidence supports the conviction. *See, e.g.*, *Heyward*, 3 F.4th at 83, 86 (considering record evidence first to determine whether *Stromberg* error was harmless, and then, separately, to determine sufficiency of evidence).

planned to facilitate a robbery whose only purpose was to obtain cocaine for resale. Thus, any gun possession in furtherance of the conspiracy to commit Hobbs Act robbery was necessarily also in furtherance of the cocaine conspiracy. *See Granda*, 990 F.3d at 1293; *Parker*, 993 F.3d at 1265; *Foster*, 996 F.3d at 1107.

Baugh does not dispute that conspiracy to possess with intent to distribute cocaine remains a valid predicate for a § 924(c) conviction, nor does Baugh point us to any offense conduct in this case that was encompassed by the Hobbs Act robbery conspiracy but not also by the cocaine conspiracy. *Cf. Heyward*, 3 F.4th at 82-83; *Jones*, 935 F.3d at 273-74. For example, Baugh does not refer to any evidence of a Hobbs Act robbery conspiracy whose object was to steal something other than cocaine. Instead, Baugh relies primarily on the jury's verdict as to his co-defendant, Harris. Harris and Baugh were both convicted of crimes related to their respective involvement in the scheme to obtain and resell cocaine from Holden. The jury convicted Harris of conspiracy to possess with intent to distribute cocaine, but it acquitted Harris of Hobbs Act robbery conspiracy and the § 924(c) count. Baugh argues that this combination "made sense if the jury decided, *e.g.*, that co-conspirators possessed the firearm to promote *only* the robbery (stealing the drugs by force) and *not* the drug conspiracy (possessing the drugs for distribution)." CA6 R. 15, Appellant Br., at 3 (emphasis in original).

Baugh's argument is logically flawed and unsupported by the record. First, Baugh does not explain, and we fail to see, how it is possible to possess a firearm in furtherance of a conspiracy to "steal" cocaine without also possessing the firearm in furtherance of a conspiracy to "possess" it. *See Granda*, 990 F.3d at 1293. Second, from the jury's acquittal of one defendant as to the § 924(c) count whom it convicted of only one predicate conspiracy, Baugh would have us infer that the jury's *conviction* of another defendant as to the § 924(c) count whom it also convicted of *both* conspiracies rested on only one of the conspiracies and not the other. That is a non sequitur. Third, Baugh points to no evidence or argument at trial based on which the jury might have concluded that Harris joined a cocaine conspiracy in furtherance of which no one possessed a gun. *See Granda*, 990 F.3d at 1290 (considering record to determine whether valid and invalid predicate offense conduct were inextricably intertwined). On the contrary, it is undisputed that "[a]t least one co-conspirator, Paul McQuiddy, acquired a gun to

help rob [Holden]" of cocaine. CA6 R. 15, Appellant Br., at 4-5. The only explanation for the jury's verdict as to Harris that has any basis in the record is that the jury found that Harris knew about a plan to obtain cocaine, but that it did not find that Harris knew that the plan was to steal cocaine from Holden with a gun.**3** As discussed above, the jury reached a different conclusion about Baugh, finding him guilty of both the cocaine conspiracy and the Hobbs Act robbery conspiracy. So the jury's verdict as to Harris does not help Baugh establish that the *Stromberg* violation at issue in this case was not harmless.

Baugh's other arguments—that the prosecutor told the jury it could convict Baugh on the § 924(c) count based on either predicate, and that "common sense" suggests guns are more closely associated with robberies than with drugs—similarly fail to establish actual prejudice. *See* CA6 R. 24, Reply Br., at 12-13. Neither of these general considerations is enough to show actual prejudice in a case where the jury had no basis to conclude that Baugh aided and abetted firearm possession in furtherance of a conspiracy to steal cocaine but not in furtherance of a conspiracy to possess that same cocaine for resale. Moreover, the prosecutor did not elaborate at any length on his statement that the jury could convict based on either predicate, which correctly stated the law at the time, nor did the prosecutor otherwise rely on any distinction between the two predicate conspiracies in his arguments to the jury concerning the § 924(c) count. Instead, the prosecutor characterized the cocaine conspiracy and the Hobbs Act robbery conspiracy as "related." DE 2436, Tr., Page ID 12560.

---

**3**In response to this explanation for the jury's verdict as to Harris, the dissent crafts a new argument that Baugh has never made. The dissent states that our interpretation of the jury's verdict requires us to assume that the jury disregarded the district court's instruction that "the crimes in Count Fifteen . . . and Count Sixteen . . . relate to a single event." DE 2589, Tr., Page ID 13380-81. The dissent does not explain why it would be appropriate to give Baugh the benefit of an argument that he has never made (and to which, therefore, the government has never had an opportunity to respond). *See, e.g.*, *In re Burke*, 863 F.3d 521, 528 (6th Cir. 2017) (citing *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 624 (6th Cir. 2013) ("arguments not raised in a party's opening brief … are waived")). Even if we were to consider this argument, it would fail. The fact that the drug conspiracy and the Hobbs Act robbery conspiracy related to a single event does not mean that the jury could not lawfully convict a co-defendant of one but not the other if the jury found that the co-defendant only knew about one of the two conspiracies, as the record suggests the jury in this case concluded with respect to Harris (but not with respect to Baugh). *See, e.g.*, DE 2589, Tr., Page ID 13368 (instructing the jury that "the government must prove … each Defendant knew the conspiracy's main purpose").

Because the *Stromberg* violation at issue in this case is harmless, Baugh is not entitled to vacatur of his § 924(c) conviction.

IV.

We affirm.

---------------

**DISSENT**

---------------

MATHIS, Circuit Judge, dissenting. The parties agree that the district court committed a *Stromberg* error during the jury trial in this case. We are called upon to determine whether the error was harmless. In making this determination, the Supreme Court has instructed us "to ask directly, 'Do I, the judge, think that the error substantially influenced the jury's decision?'" *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995). Because I answer that question in the affirmative, I respectfully dissent.

I.

In September 2009, law enforcement began investigating federal gang-related crimes in the Middle District of Tennessee involving members of the Rollin' 90s and Rollin' 60s Crips street gangs and their associates. The investigation uncovered numerous alleged drug-trafficking crimes, robberies, and plans to commit robberies. Pertinent here, on September 10, 2009, Tierra Young and Lasondra Dowell were arrested for state prescription-fraud offenses and their bails were each set at $35,000. Baugh, while incarcerated, orchestrated a plan through jail-recorded phone calls to have members of the Rollin' 60s commit armed drug-related robberies and abductions, sell the stolen drugs, and use the proceeds to post bail for Young and Dowell. Pertinent to Baugh's habeas claim, recorded jail calls among Baugh, Young, Dowell, and others involved in generating drug proceeds to bond Young and Dowell out of jail showed one of the planned robberies was to rob Kenneth Holden at gunpoint, steal his cocaine, and have Baugh's codefendant Omega Harris sell the cocaine. Recorded jail calls further revealed that Paul McQuiddy, Thomas Branum, and Michael Davis were to abduct and rob Holden of cocaine. However, the Holden robbery was aborted because McQuiddy and others involved in the plan arrived late to the agreed-upon location.

A grand jury indicted Baugh, Harris, and their coconspirators. Counts 15 through 17 of the indictment arose from the Holden plan. Count 15 charged Baugh, Harris, and others with conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1),

846.  Count 16 charged Baugh, Harris, and others with conspiracy to commit Hobbs Act robbery and extortion in violation of 18 U.S.C. § 1951.  Count 17 charged Baugh, Harris, and others with possessing firearms in furtherance of a drug trafficking crime (Count 15) and a crime of violence (Count 16) in violation of 18 U.S.C. § 924(c).  Baugh and Harris proceeded to trial.

In closing arguments at trial, the government highlighted to the jury that a guilty verdict for Count 17 could rely on either Count 15 or Count 16 as the predicate offense.  Similarly, the district court instructed the jury:

> [A]s the crimes alleged in Count Fifteen (conspiracy to possess with intent to distribute a controlled substance) and Count Sixteen (conspiracy to commit a Hobbs Act Robbery) relate to a single event, you may find the defendant(s) guilty of the crime in Count Seventeen (if all the elements are satisfied) as long as you find that the defendant or defendants committed one of the particular predicate crimes.

R. 2589, PageID 13380–81.  The verdict form for Count 17 read:

> We, the jury, unanimously find the following:
>
> . . .
>
> With respect to Count Seventeen of the indictment, that on or about September 10, 2009, Defendant Leonard Baugh knowingly possessed firearms in furtherance of the crime of conspiracy to possess a controlled substance with intent to distribute or conspiring to commit a Hobbs Act robbery, in violation of Title 18, United States Code, Sections 924(c) and 2.

R. 2136, PageID 10705, 10708.

The jury found Baugh guilty on Counts 15, 16, and 17.  For Count 17, the district court did not instruct the jury to specify whether its verdict rested on Count 15, Count 16, or both.  The jury found Harris guilty on Count 15 (the drug conspiracy charge) and acquitted him of Count 16 (the conspiracy to commit Hobbs Act robbery charge) and Count 17 (the § 924(c) charge).

## II.

"A conviction based on a general verdict is subject to challenge if the jury was instructed on alternative theories of guilt and may have relied on an invalid one." *Hedgpeth v. Pulido*, 555 U.S. 57, 58 (2008) (per curiam) (citations omitted).  This rule is derived from *Stromberg v.*

*California*, 283 U.S. 359 (1931). *Stromberg* stands for "the principle that, where a provision of the Constitution forbids conviction on a particular ground, the constitutional guarantee is violated by a general verdict that may have rested on that ground." *Griffin v. United States*, 502 U.S. 46, 53 (1991). "[A] general verdict may be set aside 'where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected.'" *United States v. Black*, 561 U.S. 465, 470 (2010) (quoting *Yates v. United States*, 354 U.S. 298, 312 (1957)).

After *United States v. Davis*, 139 S. Ct. 2319 (2019), conspiracy to commit Hobbs Act robbery is no longer considered a crime of violence. Consequently, the district court committed a *Stromberg* error when it instructed the jury that it could convict Baugh of violating § 924(c) by relying on either the conspiracy to commit Hobbs Act robbery offense or the drug-trafficking offense without requiring the jury to specify the predicate offense. Baugh brought a motion to vacate his conviction on Count 17 pursuant to 28 U.S.C. § 2255. To succeed, the *Stromberg* error must not have been harmless.

In *Murr v. United States*, this court adopted the standard announced in *Brecht v. Abrahamson*, 507 U.S. 619 (1993), to determine whether "a constitutional error that implicates trial procedures" is harmless when a prisoner seeks § 2255 relief. 200 F.3d 895, 906 (6th Cir. 2000). *Brecht*, in turn, held "that the *Kotteakos* [*v. United States*, 328 U.S. 750 (1946)] harmless-error standard applies" when determining whether habeas relief must be granted due to constitutional errors. 507 U.S. at 638. "The test under *Kotteakos* is whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Id.* at 637 (quoting *Kotteakos*, 328 U.S. at 776). *Kotteakos* expounded on the harmless-error standard as follows:

> If, when all is said and done, the [court] is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand . . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even

so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

328 U.S. at 764–65.

We are required to accept that a constitutional error substantially affected the jury's decision if we have "grave doubt" about the error's effect on the jury. *O'Neal*, 513 U.S. at 438. "Grave doubt" means that the court feels itself "in virtual equipoise as to the harmlessness of the error." *Id.* at 435. "When a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict,' that error is not harmless. And, the petitioner must win." *Id.* at 436. "There must be more than a 'reasonable probability' that the error was harmful." *Davis v. Ayala*, 576 U.S. 257, 268 (2015) (quoting *Brecht*, 507 U.S. at 637).

## III.

The *Stromberg* error substantially influenced the jury's decision to convict Baugh of violating § 924(c). *See O'Neal*, 513 U.S. at 436. There is no way to determine from the record whether the jury relied on the drug-trafficking offense in Count 15 or the Hobbs Act robbery conspiracy offense in Count 16 as the predicate offense for Count 17. The government argued to the jury that it could convict Baugh and Harris on Count 17 by finding that they possessed firearms in furtherance of Count 15 *or* Count 16. The district court instructed the jury that Counts 15 and 16 related to a single event and, therefore, the jury could rely on either count as the predicate for Count 17. The verdict form tracked the government's argument and the district court's instructions.

The jury found Baugh guilty on Counts 15, 16, and 17. The jury was not required to specify which predicate offense it relied on to convict Baugh of the § 924(c) violation on Count 17. And despite the district court's instruction that Counts 15 and 16 arose from a single event, the jury only found Harris guilty of Count 15 and acquitted him on Counts 16 and 17. This seems to indicate that the jury believed the coconspirators possessed firearms in furtherance of the conspiracy to rob Holden (not the drug-trafficking conspiracy), and that Harris only participated in the drug-trafficking conspiracy. Keep in mind that juries consider the following

six non-exclusive factors in determining whether a firearm is possessed in furtherance of a drug-trafficking offense: (1) whether the firearm is strategically located so that it is quickly and easily available for use, (2) whether the firearm is loaded, (3) the type of firearm, (4) the legality of the possession of the firearm, (5) the type of drug activity conducted, and (6) the time and circumstances under which the firearm was found. *United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001); Sixth Cir. Pattern Jury Instructions § 12.03 (2023). There is no indication in the record as to how the jury weighed these factors in deciding Count 17 for Baugh and Harris. Because the jury was instructed that it could rely on either Count 15 or Count 16 as a predicate offense for Count 17 and because the record does not indicate that the jury relied on the drug-trafficking offense rather than the conspiracy to commit robbery offense, Baugh's § 924(c) conviction on Count 17 should be vacated.

IV.

The majority, at the government's urging, has decided to follow the Eleventh Circuit's "inextricably intertwined" test for determining harmless error. Under that test, when there is a *Stromberg* error arising from a § 924(c) conviction that could rest on either a valid or an invalid predicate offense, the error is harmless if the invalid predicate offense is inextricably intertwined with the valid predicate offense. *See Granda v. United States*, 990 F.3d 1272, 1293 (11th Cir. 2021); *Foster v. United States*, 996 F.3d 1100, 1107 (11th Cir. 2021). Thus, if Count 15—the valid drug-trafficking offense—and Count 16—the now-invalid crime of violence—are inextricably intertwined, the district court's *Stromberg* error is harmless and Baugh's § 924(c) conviction must stand.

I would not apply the inextricably intertwined test as it seems to conflict with the *Brecht/Kotteakos* harmless-error standard. The inextricably intertwined test asks us, as judges, to determine whether the valid and invalid predicates are inextricably intertwined. If we find that they are, we must necessarily find the *Stromberg* error harmless. On the other hand, the *Brecht/Kotteakos* harmless-error standard places the focus where it should be—on the *Stromberg* error's impact on the jury. As *Kotteakos* cautions: "The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence." 328 U.S. at 765. Under the inextricably

intertwined test, if there is enough to support the result, that is the end of the inquiry and the error is harmless per se.

In the context of criminal cases, the inextricably intertwined concept has generally been limited to evidentiary issues. For instance, "[w]e have recognized the admissibility of *res gestae*, or background evidence, in limited circumstances when the evidence includes conduct that is 'inextricably intertwined' with the charged offense." *United States v. Clay*, 667 F.3d 689, 697 (6th Cir. 2012) (quoting *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000)). I see no reason to use this concept to determine whether a constitutional error is harmless, particularly when the Supreme Court has already told us the appropriate standard to use.

But even applying the inextricably intertwined test, I would still find that the *Stromberg* error in this case was not harmless. Remember that the district court instructed the jury that Counts 15 and 16 arose from a single event. Also remember that "in all cases, juries are presumed to follow the court's instructions." *CSX Transp., Inc. v. Hensley*, 556 U.S. 838, 841 (2009); *United States v. Guzman*, 450 F.3d 627, 629 (6th Cir. 2006). The jury found Baugh's codefendant Harris guilty of Count 15 but not Count 16. This means that the jury was able to extricate the drug-trafficking conspiracy from the robbery conspiracy. And after disentangling those counts, the jury determined that Harris did not possess a firearm in furtherance of the drug-trafficking offense in Count 15. Because the jury has already determined by its verdict for Harris that Counts 15 and 16 are not inextricably intertwined, I have grave doubt about whether the *Stromberg* error was harmless. *See O'Neal*, 513 U.S. at 438; *see also United States v. Heyward*, 3 F.4th 75, 84–85 (2d Cir. 2021) (finding that a now-invalid predicate crime of violence was not inextricably intertwined with a valid predicate drug-trafficking offense); *United States v. Jones*, 935 F.3d 266, 273–74 (5th Cir. 2019) (same). The cases relied on by the majority and the government applying the inextricably intertwined test do not contain objective proof through the verdict that the jury was able to separate the valid predicate from the invalid one for the defendant or any codefendant. *See Granda*, 990 F.3d at 1293; *Parker v. United States*, 993 F.3d 1257, 1265 (11th Cir. 2021); *Foster*, 996 F.3d at 1107. As such, each of those cases is distinguishable.

The majority posits that the only explanation for Harris's conviction on Count 15 and acquittal on Counts 16 and 17 is that Harris knew that his coconspirators planned to obtain cocaine but did not know they planned to steal it from Holden with firearms.  That explanation requires us to assume the jury disregarded the district court's single-event instruction.  I see no basis in the record for making that assumption.

V.

The question we ask is whether the constitutional trial error "had a 'substantial and injurious effect or influence in determining the jury's verdict.'"  *O'Neal*, 513 U.S. at 435.  Because I believe the answer to that question in this case is "Yes," I dissent.