**FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-13812

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

JOSEPH LAMONTE OTT,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:24-cr-80018-KAM-1

_____

Before GRANT, LAGOA, and WILSON, Circuit Judges.

GRANT, Circuit Judge:

This case considers whether an attempt to commit a qualifying crime of violence can itself qualify as a crime of violence under the United States Sentencing Guidelines. Though that

question may have been difficult at one time, the Sentencing Commission has answered it. In 2023, the Commission amended the Guidelines to define "crime of violence" as including any *attempt* to commit a crime of violence. And because our precedent already establishes that New York second-degree robbery is a crime of violence, the defendant's attempt to commit that crime was also a crime of violence. We affirm his sentence.

## I.

In January 2024, Joseph Ott robbed a bank in Wellington, Florida, and this appeal challenges his sentence for that crime. But the story really begins in 2010, when he snatched a purse from an 81-year-old woman while she tried to feed a parking meter in New Rochelle, New York. In the process, he threw her against a brick wall, causing bruising and pain to her right arm and hip. Although he was originally charged with second-degree robbery, an offense that involves forcibly stealing property under New York law, Ott pleaded down to *attempted* second-degree robbery, a lesser included offense for which he spent nearly two years incarcerated and three years on parole.

Fast-forward to the Florida bank robbery at issue here, in which Ott passed a note to the teller, threatening to "shoot everybody" unless she gave him "all of the money in the drawer." When she froze instead of following his orders, Ott leaped over the counter. Shoving her out of the way, he opened various cash drawers and eventually made off with more than $4,000. He fled the state, but local police soon tracked him down in Virginia. They

tried (and failed) to apprehend him with a traffic stop. Instead, Ott led them on a high-speed chase before crashing his friend's car and fleeing on foot. The police found him on a nearby roof and arrested him.

A grand jury indicted Ott on one count of bank robbery in violation of 18 U.S.C. § 2113(a) & (d), and he pleaded guilty. The district court accepted his plea and ordered the preparation of a presentence investigation report. Following the U.S. Sentencing Guidelines, the PSI calculated his base offense level as 20 and applied various adjustments, both up and down, to reach a total offense level of 31.

Ott objected to, among other things, the career offender enhancement he received. One way to qualify as a career offender under the Guidelines is by having two prior felony convictions for crimes of violence. U.S.S.G. § 4B1.1(a). The PSI identified two such crimes, but Ott argued that one, attempted New York robbery, was not a proper predicate for the enhancement. That offense, he contended, does not qualify as a crime of violence under the Guidelines. *See* U.S.S.G. § 4B1.2(a).

The district court disagreed. It concluded that a recent Guidelines amendment made clear that his New York conviction was a crime of violence under U.S.S.G. § 4B1.1. *See* U.S. Sentencing Guidelines Manual app. C, amend. 822 (2023). The court adopted the PSI's Guidelines calculation and then exercised its discretion to apply a downward variance. It sentenced Ott to 168 months of imprisonment—twenty months below the Guidelines range. On

appeal, Ott renews his argument that the career offender enhancement should not apply to him.

## II.

We review the interpretation and application of the U.S. Sentencing Guidelines de novo. *United States v. Hicks*, 100 F.4th 1295, 1297 (11th Cir. 2024). We also review the district court's classification of the defendant as a career offender de novo. *United States v. Pridgeon*, 853 F.3d 1192, 1198 n.1 (11th Cir. 2017); *see also United States v. Brooks*, 112 F.4th 937, 943 (11th Cir. 2024).

## III.

This is a case about the categorical approach—just not in the way Ott thinks. Here, that method is the beginning of the process, but not the end.

The Supreme Court has directed courts to apply this approach in a variety of situations—the Armed Career Criminal Act, the U.S. Sentencing Guidelines, and the Immigration and Nationality Act, to name a few—to determine whether a defendant's conviction qualifies as a predicate offense. *See United States v. Harrison*, 56 F.4th 1325, 1331 n.1 (11th Cir. 2023); *Parker v. United States*, 993 F.3d 1257, 1264 (11th Cir. 2021). One common application is deciding whether an offense satisfies a certain definition of violence. *See United States v. Eason*, 953 F.3d 1184, 1189 (11th Cir. 2020). Another is assessing whether an offense is a crime of moral turpitude. *See United States v. Lopez*, 75 F.4th 1337, 1341 (11th Cir. 2023). Yet another is considering whether a specific state

24-13812                Opinion of the Court                5

offense has the same elements as a generic federal offense. *See United States v. Rowe*, 143 F.4th 1318, 1327 (11th Cir. 2025).

Here, the question is whether Ott's convicted offense, attempted second-degree New York robbery, is a crime of violence. If so, he faces a higher sentence because he qualifies as a career offender under the U.S. Sentencing Guidelines. And under the categorical approach, to decide whether an offense qualifies as a crime of violence, we consider not whether the defendant acted violently, but whether the least culpable conduct that could lead to a conviction for that offense would qualify as violent. *See Eason*, 953 F.3d at 1189. In other words, we presume that Ott's conviction "rested upon nothing more than the least of the acts criminalized, and then determine whether even those acts are encompassed by the crime of violence definition" in the Guidelines. *Id.* (quotation omitted).

The Supreme Court's decision in *United States v. Taylor* at least arguably introduced another layer to this already complicated analysis. 596 U.S. 845 (2022). There had been some debate about how to apply the categorical approach to inchoate offenses like attempt when evaluating the crime-of-violence issue, and *Taylor* decided the question in one specific context. The Court held that attempted Hobbs Act robbery does not qualify as a crime of violence under 18 U.S.C. § 924(c)(3)(A), because "no element of attempted Hobbs Act robbery requires proof that the defendant used, attempted to use, or threatened to use force." *Taylor*, 596 U.S. at 852.

6                      Opinion of the Court                24-13812

Whatever the merits of that reading, the Sentencing Commission did not want to repeat it for the Guidelines. The Commission soon passed an amendment, sweeping in a broad variety of inchoate crimes:

> *Inchoate Offenses Included.*—The terms ʻcrime of violence' and ʻcontrolled substance offense' include the offenses of aiding and abetting, attempting to commit, or conspiring to commit any such offense.

U.S. Sentencing Guidelines Manual app. C, amend. 822 (2023) (codified at U.S.S.G. § 4B1.2(d)).[1]

---

[1] The quoted language had already appeared in the commentary to § 4B1.2, but the amendment moved it—without change—to the text of the guideline. The Commission did this in response to disagreement among the circuit courts about how much weight to afford Guidelines commentary:

> Although most circuits had previously held that this commentary was authoritative under *Stinson v. United States*, 508 U.S. 36 (1993), several courts have now concluded that the guideline definition of "controlled substance offense" does not include inchoate offenses because such offenses are not expressly included in the guideline text. *See United States v. Dupree*, 57 F.4th 1269 (11th Cir. 2023) (*en banc*); *United States v. Campbell*, 22 F.4th 438 (4th Cir. 2022); *United States v. Nasir*, 17 F.4th 459 (3d Cir. 2021) (*en banc*); *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) (*en banc*); *United States v. Winstead*, 890 F.3d 1082 (D.C. Cir. 2018). Several courts held that the Commission exceeded its authority under *Stinson* when it attempted to incorporate inchoate offenses into § 4B1.2(b)'s definition through the commentary, finding that the commentary can only interpret or explain the guideline, it cannot expand its scope by adding qualifying offenses. *See, e.g.*,

24-13812                    Opinion of the Court                              7

So after the amendment, we still apply the categorical approach—but only to the substantive crime that Ott attempted to carry out.  If that crime qualifies as a crime of violence, so does its attempt.  We therefore first consider whether second-degree New York robbery qualifies as a crime of violence.  If so, its attempt does too.

⋆       ⋆       ⋆

The Guidelines define a crime of violence as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year" that also satisfies the requirements of either the enumerated offenses clause or the elements clause.  U.S.S.G. § 4B1.2(a).  Nine listed offenses qualify under the enumerated offenses clause, including murder, arson, and other serious crimes.  *Id.* § 4B1.2(a)(2).  And another set of offenses qualify under the elements clause if they have "as an element the use, attempted use, or threatened use of physical force against the person of another."

---

*Havis*, 927 F.3d at 385–87.  More recently, courts have relied on *Kisor v. Wilkie*, 139 S. Ct. 2400 (2022), to hold that guideline commentary should not be afforded deference unless the guideline text is genuinely ambiguous.  *See, e.g.*, *Dupree*, 57 F.4th at 1275.  Applying the *Kisor* holding to the guidelines, courts have concluded that the plain language definition of "controlled substance offense" in § 4B1.2 unambiguously excludes inchoate offenses.  Similarly, courts have held that "crime of violence" excludes conspiracies because the § 4B1.2 commentary does not warrant *Kisor* deference.  *See, e.g.*, *United States v. Abreu*, 32 F.4th 271, 277–78 (3d Cir. 2022).

U.S. Sentencing Guidelines Manual app. C, vol. IV, amend. 822, at 246 (2023).

*Id.* § 4B1.2(a)(1).  The same language is used in the Armed Career Criminal Act's elements clause to define a "violent felony."  *See* 18 U.S.C.  § 924(e)(2)(B)(i).    Because of the "virtually identical" language in the two elements clauses, we have held that our "decisions about one apply to the other."  *Gilbert v. United States*, 640 F.3d 1293, 1309 n.16 (11th Cir. 2011) (en banc) (quotation omitted).  That makes this case easy.

Ott pleaded guilty to second-degree New York robbery. New York law distinguishes three degrees of robbery, each of which defines a crime committed by someone who "forcibly steals property."  N.Y. Penal Law §§ 160.05 (third degree), 160.10 (second degree), 160.15 (first degree).  As we have already recognized, "the core crime of New York robbery, regardless of the degree, is defined as forcibly stealing property."  *United States v. Sanchez*, 940 F.3d 526, 531 (11th Cir. 2019) (alteration adopted and quotations omitted) (citing *People v. Miller*, 87 N.Y.2d 211, 214 (1995)).  That means New York robbery satisfies the elements clause of the Armed Career Criminal Act—it is a violent felony, as we have held before.  *Id.* at 532.  And because it is a violent felony under the Armed Career Criminal Act, New York robbery straightforwardly qualifies as a crime of violence under the Guidelines too.[2]

---

[2] Because we conclude that Ott's conviction for attempted New York robbery qualifies as a crime of violence under the elements clause, we need not consider his argument that it *doesn't* qualify under the enumerated offenses clause.

We next turn to U.S.S.G. § 4B1.2(d). Again, that provision sets the table for recognizing inchoate offenses as crimes of violence: "The terms 'crime of violence' and 'controlled substance offense' include the offenses of aiding and abetting, attempting to commit, or conspiring to commit any such offense."

In plain English, this means that the attempt to commit a qualifying crime of violence is also considered a crime of violence. No further inquiry is necessary because the language is not ambiguous, and "we presume that the Sentencing Commission said what it meant and meant what it said." *United States v. Fulford*, 662 F.3d 1174, 1177 (11th Cir. 2011) (quotation omitted). So for Ott, because New York robbery qualifies as a crime of violence under the Guidelines, attempted New York robbery does too. His sentencing enhancement was a proper application of the Guidelines.

Against this obvious conclusion, Ott argues that subsection (d)'s inclusive language for inchoate offenses applies only to the enumerated offenses clause—and not to the elements clause. Not so, and the structure of the provision shows why. First, subsection (a) defines "crime of violence" as encompassing offenses that satisfy either the elements clause or the enumerated offenses clause. U.S.S.G. § 4B1.2(a). Next, subsections (b) and (c) define "controlled substance offense" and "two prior felony convictions," respectively. *Id*. § 4B1.2(b), (c). Only then do we arrive at subsection (d), which explains that the "terms 'crime of violence' and 'controlled substance offense' include the offenses of

aiding and abetting, attempting to commit, or conspiring to commit any such offense." *Id.* § 4B1.2(d). Nothing in the text suggests that this provision applies to only half of the definition of crime of violence. Had the Guidelines' drafters intended such an oddity, they knew how to say so. *Cf. United States v. Mandhai*, 375 F.3d 1243, 1247 (11th Cir. 2004).

Ott raises various other arguments, none of which persuade us. For one, Ott argues—pointing to the Supreme Court's conclusion in *Taylor*—that *attempted* New York robbery (rather than *completed* New York robbery) does not categorically qualify as a crime of violence under § 4B1.2(a)'s elements clause. *See Taylor*, 596 U.S. at 851.

Perhaps so, at least by *Taylor*'s logic. But Ott ignores that the statute in *Taylor* has no provision like U.S.S.G. § 4B1.2(d), which specifically expands the scope of qualifying predicate crimes to cover inchoate offenses. *See* 18 U.S.C. § 924(c)(3). So the district court was right to disregard *Taylor* in deciding that attempted New York robbery constitutes a crime of violence under the Guidelines.

Ott also suggests that our reading "would give rise to absurd results" because it would "layer attempt on top of attempt" and allow "an offense to qualify because it is an *attempt* to commit an offense that requires the *attempted* use of force." We have our doubts. But whether our interpretation of subsection (d) requires such a result is a question for a different case. Here, the question is only whether *Ott's* offense qualifies, and it does. When the Guidelines language "is clear and unambiguous, it must be

followed except in the most extraordinary situation where the language leads to an absurd result contrary to clear legislative intent." *United States v. Pompey*, 17 F.3d 351, 354 (11th Cir. 1994) (quotation omitted).  Ott offers no evidence in that regard, nor do we see any.  In fact, the available evidence points in the opposite direction—that the Commission intended exactly the result that Ott deems absurd.  *See* U.S. Sentencing Guidelines Manual app. C, amend. 822 (2023).  The absurdity objection fails, and we implement the Guidelines as written.  *See Fulford*, 662 F.3d at 1178.

⋆      ⋆      ⋆

We already know that New York robbery qualifies as a crime of violence under the elements clause of U.S.S.G. § 4B1.2(a). And subsection (d) tells us that any attempt to commit a qualifying crime of violence is itself a crime of violence.  That means that Ott's New York conviction for attempted robbery was a crime of violence under the Guidelines and a proper predicate for the career offender enhancement.  We **AFFIRM** his sentence.